IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| HLA, INC., | ) | CASE NO. 09-_____ |
| | ) | |
| Debtor. | ) | |

### MOTION REQUESTING ENTRY OF ORDER AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND TAXES AND REQUEST FOR EXPEDITED HEARING

COMES NOW HLA, Inc. ("Debtor") and hereby files this "Motion Requesting Entry of Order Authorizing Payment of Prepetition Wages, Salaries, and Taxes and Request for Expedited Hearing" (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

### Jurisdiction

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a).

### Background

2.  On May 14, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, modified, or supplemented the "Bankruptcy Code").

3.  Debtor is a non-profit Georgia corporation. Kenneth Spooner is the Debtor's Chief Executive Officer, Chief Financial Officer, Secretary, and sole board member. Debtor's primary place of business is located at 830 Hidden Lake Road,

1

Dahlonega, Georgia ("Premises").  The Premises consist of approximately 200 acres of land and numerous buildings.

4.    Pursuant to a lease agreement dated January 1, 1998, as subsequently amended on January 20, 1999, and as evidenced by that certain Memorandum of Lease dated January 20, 1999 recorded in Deed Book X-21, Page 118 with the Lumpkin County Superior Court Clerk, the Premises are leased from Hidden Lake Academy, Inc. ("Academy").  The Academy, a related entity, also filed for Chapter 11 bankruptcy protection on the Petition Date.  At the time of the bankruptcy filing, a foreclosure was scheduled for the first Tuesday in June against the Premises.

5.    HLA is a therapeutic boarding school that offers educational and counseling services in a therapeutic environment to adolescents experiencing serious struggles with emotional and behavioral issues including, without limitation, oppositional-defiant behavior, depression, addiction disorders, and attention deficit disorders.  HLA seeks to help a child develop physically, academically, socially, spiritually, and emotionally.  HLA program runs for approximately eighteen (18) months and HLA offers rolling enrollment.  Currently, sixty-four (64) students are enrolled at HLA.  HLA began operations in 1994 and experienced steady and rapid growth during the next twelve (12) years.

6.    HLA is licensed as a child care institution with the Georgia Department of Human Services and is accredited by the Southern Association of Colleges and Schools, Southern Association of Independent Schools, and Georgia Accrediting Commission. HLA is also a member of Georgia Independent School Association.

7. HLA began experiencing difficulties in 2006. In March of 2006, the business manager resigned. After the resignation, it was determined that certain taxes and vendors were not paid. The replacement business manager was terminated after approximately two (2) months. Despite these issues, HLA enrolled thirty-two (32) students from the end of July 2006 through September 15, 2006.

8. On September 11, 2006, a class action complaint was filed in the United States District Court for the Northern District of Georgia, Gainesville Division ("District Court"), case no. 06-CV-0146, captioned *Jill Ryan and Ryan, and Doff Meyer and Robin Brecker, individually and on behalf of others similarly situated ("Plaintiffs") vs. Hidden Lake Academy, Inc., HLA, Inc., Hidden Lake Foundation, Inc[1]., and Dr. Leonard Buccellato* ("District Court Litigation"). In their complaint ("Complaint"), the Plaintiffs asserted the following four causes of action: (i) breach of contract against HLA; (ii) breach of the implied covenant of good faith and fair dealing; (iii) violations of Georgia's fair business practices act against HLA, the Academy, Hidden Lake Foundation, Inc. and Dr. Leonard Buccellato (collectively, HLA, the Academy, Hidden Lake Foundation, Inc. and Dr. Leonard Buccellato are referred to herein as the "Defendants"); and (iv) unjust enrichment against the Defendants. A summary of the pleadings and resolution of the District Court Litigation is set forth below:

    a. answer to Complaint and counter-claim filed by HLA on November 8, 2006;

    b. answers to Complaint filed by the Academy, Hidden Lake Foundation, Inc., and Dr. Leonard Buccellato on November 10, 2006;

---

[1] Hidden Lake Foundation, Inc. is a nonprofit corporation that raises funds for the school.

    c. motion filed by the Plaintiffs seeking permission to proceed anonymously filed on November 16, 2006 and response in opposition thereto filed by the Defendants on December 6, 2006;

    d. motion for judgment on the pleadings with supporting briefs filed by the Defendants on November 21, 2006, response in opposition thereto filed by Plaintiffs on December 18, 2006, and reply brief filed by Defendants on January 16, 2007;

    e. motion to dismiss HLA's counterclaim filed by Plaintiffs on November 28, 2006, response in opposition thereto filed by HLA on December 22, 2006; and

    f. motion to certify class filed by Plaintiffs on December 11, 2006, response in opposition thereto filed by Defendants on December 29, 2006, and reply brief filed by Plaintiffs on January 19, 2007;

9. With respect to the motions set forth above, the District Court entered the following orders:

    a. order denying Plaintiff's motion to proceed anonymously entered on February 9, 2007;

    b. order granting Plaintiff's motion to dismiss HLA's counterclaim entered on March 26, 2007;

4

  c. order granting in part and denying in part Defendant's motion for judgment on the pleadings entered on April 2, 2007 wherein, the District Court dismissed the following claims (i) Meyer and Brecker's claims brought under Georgia's fair business practices act, (ii) Ryans' claim against Hidden Lake Foundation, Inc., and Dr. Leonard Buccellato brought under Georgia's fair business practices act; (iii) Plaintiffs' unjust enrichment claim against HLA; and (iv) plaintiffs' request for injunctive relief; and

  d. order denying, without prejudice, Plaintiff's motion to certify class entered on August 15, 2007.

10. A settlement agreement resolving the District Court Litigation was reached by the parties. On October 24, 2008, the District Court entered an order and final judgment which approved the settlement agreement and closed the case. The Clerk of the District Court issued a writ of execution on February 18, 2009.

11. As a result of the District Court Litigation, HLA and the other defendants incurred substantial legal expense which was not covered by insurance. Enrollment declined during the District Court Litigation and the negative publicity associated therewith. Lastly, the overall economic decline has impacted the Debtor.

12. Unfortunately, during the litigation, HLA's financial resources were depleted. HLA was unable to pay certain obligations including, without limitation, rent, taxes, and the settlement. HLA determined that reorganizing under chapter 11 of the Bankruptcy Code provided the most efficient method to reorganize its financial affairs.

13. HLA reestablished its relationship with the referral base and enrollment has stabilized. Thus, HLA has the foundation to reorganize.

## Relief Requested

14. By this Motion, the Debtors request that this Court enter an Order, under sections 507(a)(3), 507(a)(4) and 105(a) of the Bankruptcy Code authorizing the Debtors to (i) pay to certain employees their accrued prepetition wages, if any, on regularly scheduled post-petition pay dates and pay employees terminated post-petition any severance benefits that may come due, (ii) confirming the Debtors' authority to pay withholding and payroll-related taxes; (iii) directing all banks to honor prepetition checks for payment of prepetition employee claims; and (iv) authorizing payment of prepetition health care benefits.

## Basis for Relief

15. As of the Petition Date, the Debtor employed approximately forty (40) faculty, staff, and employees. Employees are paid on a weekly basis. The next payroll is due on May 15, 2009 and includes wages earned prior to the Petition Date.

16. Gross payroll for the period ending April 30, 2009 is approximately $40,000.00, exclusive of applicable taxes. Federal and state payroll taxes and miscellaneous employee deductions for benefits total approximately $10,000.00.

17. The Debtor is required by law to (i) withhold from their payrolls, and remit to the appropriate taxing authorities, certain federal, state and local income taxes, social security, and Medicare taxes (collectively, the "Payroll Tax Obligations"). The Debtors' obligations in respect of Payroll Tax Obligations are approximately $7,600.00. The Debtors seek authority to pay any such estimated Payroll Obligations and

6

unemployment taxes plus, any additional amounts which Debtor may not be aware of. Additionally, miscellaneous deductions for benefits and other employee related matters total approximately $2,400.00. Net payroll for this period is approximately $30,000.00.

**Applicable Authority**

18. Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a debtor's employee's claim for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtors for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority status to the extent of $10,000.00 per employee. 11 U.S.C. § 507(a)(3), (a)(4). Furthermore, section 363(b) of the Bankruptcy Code provides that the debtor in possession, "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19. The Debtor believes that the unpaid salaries and wages constitute priority claims under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. No one employee is due $10,000.00. The gross payroll for employees ranges from $680.00 to $2,300.00. The Debtor submits, however, that to the extent any employee is owed in excess of $10,000.00 on account of Prepetition Employee Obligations, payment of such amount is necessary and appropriate and is authorized under section 105(a) pursuant to the

"necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." Duparquet, Inc. v. Local Union No. 3, Int'l Bd. Of Elec. Workers, 386 F.2d 649 (2d Cir. 1967) (separation pay obligations arising in connection with a post-petition employee lay-off are administrative claims).

20. Here, the post-petition stability of the Debtor's workforce is integrally tied to the Debtors' ability to continue to continue the school's operations and reorganize its business and financial affairs. Any delay in payments to employees will impact the Debtor's relationship with essential workers and may irreparably harm employee morale, dedication, confidence, and cooperation. The support and efforts of the Debtor's workforce during the pendency of the case is critical to the Debtor's ability to maximize the value of its estate. At this early stage, the Debtor cannot risk losing the critical mass of their personnel or suffering the substantial damage to the business that would inevitably result from any decline in employee morale.

21. In addition, for many of the employees, the wages received from the Debtor is needed to enable the employees to meet their own financial obligations. As a result, absent an order granting the relief requested in this Motion, the employees and their families are likely to suffer personal hardship and, in many instances, serious financial difficulties.

22. Similar relief to the relief requested herein has been granted in this and other courts. See, e.g., In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005); In re Interstate Bakeries Corp., Case No. 04-45814 (Bankr. W.D. Mo. Sept. 24, 2004); In re Git-N-Go, Inc., Case No. 04-10509 (Bankr. N.D. Okla. Feb.

13, 2004); <u>In re Westpoint Stevens, Inc.</u>, Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); <u>In re The Penn Traffic Company</u>, Case No. 03-22945 (Bankr. S.D.N.Y. May 30, 2003). The Debtors submits that the circumstances of this case warrant similar relief.

### Notice

23. Notice of this Motion will be given to: (i) the Office of the United States Trustee, and (ii) the parties listed on each of the Debtors' twenty (20) largest unsecured creditors list. The Debtor submits that, under the circumstances, no other or further notice is required.

### Request for Expedited Hearing

24. Debtor requests that this Court shorten any applicable notice period and schedule a hearing on this Motion on the earliest available calendar on or before May 15, 2009, at the latest. Maintaining a stable work force is essential to Debtor's reorganizational effort. Failure to pay employees will result in hardship for the employees and their families.

WHEREFORE, Debtor respectfully requests that this Court enter an order granting the Motion and such other relief as may be just and proper.

Respectfully submitted this 14th day of May, 2009.

M. DENISE DOTSON, LLC

*/s/ M. Denise Dotson*
M. Denise Dotson
Georgia Bar No. 227230
170 Mitchell Street
Atlanta, Georgia 30309
(404) 526-8869 Telephone
(404) 526-8855 Facsimile

Proposed Counsel for the
Debtor and Debtor in Possession

9

**Certificate of Service**

I, M. Denise Dotson, hereby certify that I caused to be served a true and correct copy of the foregoing document via first class United States mail in a property addressed envelope with sufficient postage affixed thereon to ensure delivery upon the parties listed below:

>Office of the United States Trustee
>362 Richard B. Russell Federal Building
>75 Spring Street
>Atlanta, GA 30303

>This 14th day of May, 2009.

>M. DENISE DOTSON, LLC

>*/s/ M. Denise Dotson*
>M. Denise Dotson
>Georgia Bar No. 227230
>170 Mitchell Street
>Atlanta, Georgia 30309
>(404) 526-8869 Telephone
>(404) 526-8855 Facsimile

>Proposed Counsel for the
>Debtor and Debtor in Possession