IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| HLA, INC., | : | CASE NO. 09-22026 |
| | : | |
| Debtor. | : | JUDGE BRIZENDINE |
| | : | |

**JOINT MOTION FOR APPROVAL OF AND AUTHORITY FOR DEBTOR TO ENTER PREMIUM FINANCE AGREEMENT**

**COMES NOW**, HLA, Inc., Debtor (the "Debtor") in the above captioned Bankruptcy Case, and Prime Rate Premium Finance Corp. ("Prime Rate") (collectively, the Debtor and Prime Rate are the "Parties"), by and through counsel, and file this Joint Motion (the "Motion") for approval of and authority for Debtor to enter premium finance agreement (the "Finance Agreement"). In support of the Motion, the Parties respectfully state as follows:

1. On May 14, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the Bankruptcy Code").

2. After the Petition Date, the Debtor continued to operate the business of the Debtor as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. After a review of the business operations of the Debtor, the Debtor has determined that certain insurance policies (the "Insurance Policies") are required to properly operate the business of the Debtor.

4. The Debtor seeks to finance the purchase of the Insurance Policies pursuant the Finance Agreement, attached hereto as Exhibit "A" and incorporated by reference, by and between the Debtor and Prime Rate.

5. Pursuant to this Motion, the Parties seek approval to enter the Finance Agreement and request authority for the Debtor to: a) execute and enter the Finance Agreement with Prime Rate as of June 12, 2009; b) deliver, perform, and consummate the Finance Agreement and perform all other acts and to make, execute, and deliver all such other and further instruments and documents that may be required for the performance thereof; c) grant Prime Rate a first priority security interest as described in the Finance Agreement; d) pay Prime Rate all sums due under the Finance Agreement; e) modify, without the necessity of further hearing or order of this Court, the Finance Agreement with the consent of Prime Rate as necessary to pay additional premiums should additional premiums become due to insurance companies under the Insurance Policies financed under the Finance Agreement.

6. The Parties submit that: a) the Insurance Policies are necessary for the proper operation of the business of the Debtor; and b) the entry of the Finance Agreement pursuant to the terms proposed herein is in the best interests of the Debtor, the Estate, and creditors of the Debtor.

**WHEREFORE**, the Parties respectfully request that the Court enter an Order, similar in form to the proposed Order attached as Exhibit "B" hereto, that:

1. Grants this Motion and approves the Finance Agreement;

2. Ratifies the Finance Agreement nunc pro tunc to June 12, 2009;

3. Authorizes the Debtor to: a) execute and enter into the Finance Agreement attached as Exhibit "A" to this Motion; b) deliver, perform, and consummate the Finance Agreement and perform all other acts and to make, execute, and deliver all such other and further instruments and documents that may be required for the performance thereof; c) grant Prime Rate a first priority security interest as described in the Finance Agreement; d) pay Prime Rate all sums due under the Finance Agreement; e) modify, without the necessity of further hearing or

order of this Court, the Finance Agreement with the consent of Prime Rate as necessary to pay additional premiums should additional premiums become due to insurance companies under the Insurance Policies financed under the Finance Agreement;

4. If the Debtor fails to issue a payment due under the Finance Agreement within fifteen days of the due date of such payment pursuant to the Finance Agreement, modifies the automatic stay imposed under Section 362 of the Bankruptcy Code without the necessity of a motion, further order, or hearing of this Court to permit Prime Rate to exercise the rights of Prime Rate under the Finance Agreement to: a) cancel the financed Insurance Policies; and b) collect and apply unearned premiums payable under the financed Insurance Policies to the balance owed under the Finance Agreement; and

5. Grants such other and further relief as the Court deems just and proper.

Respectfully submitted, this 9th day of September, 2009.

M. DENISE DOTSON, LLC

/s/ M. Denise Dotson
M. Denise Dotson
Georgia Bar No. 227230
Counsel for HLA, Inc., Debtor

Of Counsel:
M. DENISE DOTSON, LLC
170 Mitchell Street
Atlanta, Georgia 30309
(404) 526-8869

JAMES C. FRENZEL, P.C.

/s/ James C. Frenzel
James C. Frenzel
Georgia Bar No. 276830
Counsel for Prime Rate Premium Finance Corp.

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 266-9961

| PRIME RATE PREMIUM FINANCE CORPORATION, INC. | PREMIUM FINANCE AGREEMENT |
|---|---|
| 2141 Enterprise Dr. P.O. Box 100507  www.primeratepfc.com  Florence, South Carolina 29502-0507  Phone: (800) 777-7458  GA License No. 87010 | ACCOUNT NO.  GA- **5618225** |

Insured Name: HIDDEN LAKE ACADEMY
HLA INC
830 HIDDEN LAKE RD
DAHLONEGA, GA 30533
(706) 864-4730

Agent/Broker/Producer: BB&T - PRUDEN INSURANCE 8665
PO BOX 308
DALTON, GA 30722
(706) 278-1149

TIN/SSN:

| Policy Eff. Date | Term | Policy Number | Name of Insurance Company and Name and Address of General Or Policy Issuing Agent | R | Type of Coverage | Total Premium |
|---|---|---|---|---|---|---|
| 06/14/2009 | 12 | | 378-NATIONAL INDEMNITY CO %SOUTHERN INSURANCE UNDERWRITERS | Y | 42 C/AUTO PKG | $24,100.00 |

Creditor: Prime Rate Premium Finance Corporation, Inc.    Federal Truth In Lending Disclosures

| (A) Total Premiums | (B) Cash Down Payment | (C) Amount Financed (The amount of credit provided to you or on your behalf) | (D) FINANCE CHARGE (The dollar amount the credit will cost you) | (E) Total of Payments (The amount you will have paid after you have made all payment as scheduled) | (F) ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) |
|---|---|---|---|---|---|
| $24,100.00 | $6,025.00 | $18,075.00 | * $568.77 | $18,643.77 | 7.49 % |

Your PAYMENT SCHEDULE will be:    * Includes a non-refundable service charge of $20.00

You have the right to receive an Itemization of the Amount Financed
____ I want an Itemization
____ I do not want an Itemization

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 9 | $2,071.53 | On the 14 th Day of each month, Beginning 07/14/2009 |

**Security:** You are giving a security interest in any and all unearned or return premium(s) and dividends which may become due under the policy(ies) being purchased.
**Late Charge:** You will be charged 5% of the payment, subject to a minimum charge of $1.50 on any payment received more than 5 days after the due date.
**Cancellation Charge:** You will be charged a cancellation charge of $5.00 if Prime Rate cancels any insurance policy in accordance with the terms of this Agreement. If the Agreement insures a commercial risk, you will be charged $15.00.
**Prepayment:** If you voluntarily prepay in full prior to the last installment due date you will not be charged a prepayment fee and you may be entitled to a refund of part of the finance charge.
**See Above** and on the last page of this document for any additional information about non-payment default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

**NOTICE:** Your insurance policy premiums have been financed and are payable on a monthly basis. If you do not pay each payment on or before the due date or within 15 days of date due, we have the right to CANCEL your insurance policy or policies which are financed under the premium finance agreement. To avoid cancellation of your policy or policies, MAKE YOUR PAYMENTS ON TIME.

In consideration of the payment(s) to be made by PRIME RATE PREMIUM FINANCE CORPORATION, INC. ("PR") to the above insurance companies ("Insurer(s)"), their agents, representatives, or producer, the ABOVE NAMED insured ("Insured") (jointly and severally if more than one):
(1) Promises to pay to the order of PR at the above address, the Total of Payments in accordance with the Payment Schedule set forth in the above Truth-in-Lending Disclosures as well as any other sums due pursuant to this Agreement.
(2) Irrevocably appoints PR as Attorney-In-Fact with full authority to affect cancellation of the policies covered hereby or any substitution, rewrite or renewal thereof in accordance with the provisions herein, to receive all sums assigned to PR or in which it has granted PR a security interest. PR may execute and deliver on behalf of the Insured all documents, forms and notices relating to the policies covered hereby in furtherance of this Agreement. The Power of Attorney is coupled with an interest and the powers given herein may be exercised by the Attorney-In-Fact, or its successors and assigns.
(3) Acknowledges that it has received a copy of all pages of this Agreement and if the borrower is a consumer, the Insured acknowledges that he has received a copy of PR's Privacy Statement.

**THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE FOLLOWING PAGE(S) OF THIS AGREEMENT**

**NOTICE:** A. Read all pages of this Agreement before you sign. B. You are entitled to a completely filled in copy of this Agreement. C. Keep your copy of this Agreement to protect your legal rights. D. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.

| INSURED'S NAME | SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |
|---|---|---|---|

| INSURED'S NAME | SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |
|---|---|---|---|

**AGENT/BROKER/PRODUCER'S CERTIFICATION**

The Agent/Broker/Producer warrants and agrees: 1. The insurance policies listed on this Agreement are in force and the information and the premiums are correct. 2. The Insured has received a copy of this Agreement, has authorized this transaction and recognizes the security interest assigned herein. 3. All of PR's guidelines and eligibility requirements have been complied with. 4. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named Insured. 5. No audit or reporting form policies or policies subject to retrospective rating or minimum earned premiums are included, except as indicated. The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies. 6. All of the policies are cancelable by the Insured and unearned premiums will be calculated on the standard short-rate or pro-rata tables. 7. To hold in trust for PR any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or PR and to pay the monies as well as any unearned commissions to PR promptly upon demand to satisfy the outstanding indebtedness of the Insured. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinated to PR's lien or security interest therein. There are no other liens on the unearned premiums and all premiums will be paid to the insurers.

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

| AGENT/BROKER/PRODUCER | SIGNATURE OF AGENT/BROKER/PRODUCER | TITLE | DATE |
|---|---|---|---|

Exhibit A

## REMAINING PROVISIONS OF PREMIUM FINANCE AGREEMENT

(4) Assigns to PR as security for the total amount payable hereunder any and all unearned or return premiums and dividends which may become payable under the insurance policies covered by this Agreement and loss payments under said policies which reduce the unearned premiums (subject to any loss payee or mortgagee interests), and hereby authorizes and instructs its insurer(s) to pay such funds or proceeds to PR. The Insured gives to PR a security interest in all items mentioned in this paragraph. The Insured further grants to PR its interest which may arise under any state insurance guarantee fund relating to any policy shown on the front of this Agreement.

(5) Agrees in the event of a default in payment of any installment, PR may cancel the policies covered hereby after giving the notice required as prescribed by law. In case of cancellation, the unpaid balance due to PR shall be immediately payable by the Insured. The Insured understands PR may collect and enforce repayment of the indebtedness evidenced hereby without recourse to any security underlying this Agreement. If cancellation occurs, the Insured agrees to pay a finance charge on the balance due at the contract rate of interest until that balance is paid in full or until such other date as permitted by law.

(6) Agrees that any payments made to PR after Notice of Cancellation has been mailed to the insurer will be credited to the Insured's account and shall not constitute reinstatement or obligate PR to request reinstatement of any insurance policy. Any sum received from an insurer shall be credited to the Insured's indebtedness to PR, and any surplus shall be paid to whomever it is entitled. If the refund is less than $5.00, no refund will be made. In case of a deficiency, the Insured shall remain liable and pay the same with interest as set forth above. The Insured will not be required to pay an amount due under this Agreement that is less than $5.00.

(7) May voluntarily prepay the full amount due and under certain conditions be entitled to receive a partial refund of the FINANCE CHARGE computed in accordance with the method prescribed by law, after deducting any fully earned charge permitted by law.

(8) Understands that the FINANCE CHARGE begins to accrue as of the earliest Policy Effective Date, unless otherwise specified.

(9) Authorizes PR to correct or remedy any error or omission in the completion of this Agreement; the Insured will be notified at the address shown hereon of any change in Blocks (A) thru (F), or in the Federal Truth-In-Lending Disclosures or in the Itemization of the Amount Financed Disclosures.

(10) Warrants that each of the policies covered hereunder (or a binder thereof), except for policies written through residual markets, has been issued to the Insured, is in full force and effect and that no other power of attorney or other encumbrance or assignment is in effect nor will same be put into effect except for the interest of mortgagees or loss payees, and agrees that all rights conferred upon PR shall inure to PR's successors or assigns.

(11) Agrees that, in the event the total premiums are greater than that shown hereon, or if the Insured requests additional premiums be added or additional premiums financed, this Agreement may be amended to reflect the actual premiums and the Insured will either (i) pay the difference in premium due or (ii) pay any required additional down payment and any additional finance charge permitted by law. In such event PR will forward the Insured a revision notice showing all information required by law.

(12) Agrees that (i) PR assumes no liability as an insurer, (ii) this Agreement shall not be effective until a written acceptance is mailed by PR, (iii) singular words used herein shall be deemed plural and vice versa as the sense of the Agreement demands, (iv) if any court of competent jurisdiction finds any part or provision of this Agreement to be invalid or unenforceable, such findings shall not affect any other part or provision.

(13) Agrees that if this transaction is for other than personal, family or household purposes or more than $25,000 none of the provisions of the Federal Truth-In-Lending Act or the regulations promulgated thereunder shall apply.

(14) Agrees that should a check be returned for insufficient or uncollected funds, PR may re-present the check electronically and collect a service fee electronically of $20.00.

(15) Agrees that if payment is made by check, PR may use the check solely as a source document and as the basis for an electronic transaction. Receipt of the check will be deemed to be authorization for an ACH debit to the Insured's account.

(16) Agrees that any refunds may be applied against any prior debts owed PR.

(17) Agrees that the insurance agent or broker named in this Agreement is the Insured's agent, not PR's, and PR is not legally bound by anything the agent or broker represents to the Insured orally or in writing.

(18) Agrees that the money paid by PR is only for the premium as determined at the time the insurance policy is issued. PR's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured as a result of any type of misclassification of the risk. The Insured agrees to pay the company any additional premiums which become due for any reason. PR may assign to the company any rights it has against the Insured for premiums due the company in excess of the premiums returned to PR.

(19) Agrees that a $5.00 Administration Fee will be applied to any refund check that falls under the Abandoned Property Procedures if permitted by law.

(20) Agrees to pay reasonable attorneys fees and/or collection agency fees and all other costs of collection if this contract is referred for collection to any collection agency and/or attorney not a salaried employee of PR if permitted by law.

(21) Understands this Agreement is not required as a condition of the Insured obtaining insurance coverage.

(22) Waives and releases PR from any claims, lawsuits and causes of action which may be related to any prior loans and/or to any act or failure to act prior to the time this Agreement becomes a binding contract, pursuant to paragraph 12ii. PR's liability for breach of any of the terms of this Agreement or the wrongful exercise of any of its powers shall be limited to the amount of principal balance outstanding, except in the event of gross negligence or willful misconduct. The laws of the State of Georgia will govern this Agreement and any claims against PR shall be litigated exclusively in the state or federal courts of South Carolina, for Florence County.

(23) Represents that the Insured is not insolvent or presently the subject of any insolvency proceeding.

(24) Agrees to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by PR which the insurance company retains if the insurance policy issued to the Insured is auditable or is a reporting form policy or is subject to retrospective rating.

(25) Certifies that it is empowered to enter into this Agreement without any restrictions and that the individual signing it has been fully empowered to do so. To the extent that the Insured either possesses or claims sovereign immunity for any reason, such sovereign immunity is expressly waived and the Insured agrees to be subject to the jurisdiction of the laws and courts set forth in the preceding paragraphs.

(26) Agrees that the money paid by PR is only for the premium as determined at the time the insurance policy is issued. PR's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured resulting from any type of misclassification of the risk. The Insured shall pay to the insurer any additional premiums or any other sums that become due for any reason. If PR assigns the same account number to any additional extension or extensions of credit, (i) this Agreement and any other Agreement(s) identified by such account number shall be deemed to comprise a single and indivisible loan transaction, (ii) any default with respect to any component of such transaction shall be deemed a default with respect to all components of such transaction, and (iii) any unearned premiums relating to any component of such transaction may be collected and applied by PR to the totality of such transaction.

**NOTICE: SEE PREVIOUS PAGE FOR IMPORTANT INFORMATION**

GA 07

**EXHIBIT "B"**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| HLA, INC., | : | CASE NO. 09-22026 |
| | : | |
| Debtor. | : | JUDGE BRIZENDINE |
| | : | |

**CONSENT ORDER GRANTING JOINT MOTION FOR APPROVAL OF AND
AUTHORITY FOR DEBTOR TO ENTER PREMIUM FINANCE AGREEMENT**

Upon the Joint Motion (the "Motion") filed by HLA, Inc., Debtor (the "Debtor") in the above captioned Bankruptcy Case (the "Bankruptcy Case"), and Prime Rate Premium Finance Corp. ("Prime Rate") (collectively, the Debtor and Prime Rate are the "Parties") for approval of and authority for Debtor to enter premium finance agreement (the "Finance Agreement") by and between the Parties, the Parties, having consented to the entry of this Consent Order (the

"Consent Order") as evidenced by the signatures of their counsel of record, and this Court having, after due deliberation, determined that granting the relief contained herein is in the best interests of the Debtor, the Estate, and creditors of the Debtor, it is hereby **ORDERED AND ADJUDGED THAT:**

1. The Motion is GRANTED in all respects;

2. All creditors of the Debtor and all parties-in-interest received reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, notice of the Motion was proper, and no other or further notice or hearing is necessary;

3. The Debtor has demonstrated and proven to the satisfaction of this Court good, sufficient, and sound business purposes and justifications for the entry of the Finance Agreement (the "Finance Agreement") attached as Exhibit "A" to the Motion for the purpose of financing certain insurance policies (the "Insurance Policies") that are necessary to properly operate the business of the Debtor;

4. The Finance Agreement attached as Exhibit "A" to the Motion is APPROVED and ratified *nunc pro tunc* to June 12, 2009;

5. The Debtor is authorized to: a) execute and enter into the Finance Agreement attached as Exhibit "A" to the Motion; b) deliver, perform, and consummate the Finance Agreement and perform all other acts and to make, execute, and deliver all such other and further instruments and documents that may be required for the performance thereof; c) grant Prime Rate a first priority security interest as described in the Finance Agreement; d) pay Prime Rate all sums due under the Finance Agreement; e) modify, without the necessity of further hearing or order of this Court, the Finance Agreement with the consent of Prime Rate as necessary to pay additional premiums should additional premiums become

due to insurance companies under the Insurance Policies financed under the Finance Agreement;

6. If the Debtor fails to issue a payment due under the Finance Agreement within fifteen days of the due date of such payment pursuant to the Finance Agreement, the automatic stay imposed under Section 362 of the United States Bankruptcy Code (the "Bankruptcy Code") shall be immediately modified without the necessity of a motion, further order, or hearing of this Court to permit Prime Rate to exercise the rights of Prime Rate under the Finance Agreement to: a) cancel the financed Insurance Policies; and b) collect and apply unearned premiums payable under the financed Insurance Policies to the balance owed under the Finance Agreement; and

7. The rights of Prime Rate under the Finance Agreement are fully preserved and protected and are and shall remain: a) unimpaired by the Bankruptcy Case; and b) in full force and effect, notwithstanding any subsequent conversion of either of the Bankruptcy Case to a proceeding under Chapter 7 or any other provision of the Bankruptcy Code.

-End of Document-

Consented and agreed to by, this 9th day of September, 2009.

M. DENISE DOTSON, LLC

/s/ M. Denise Dotson
M. Denise Dotson
Georgia Bar No. 227230
Counsel for HLA, Inc., Debtor

Of Counsel:
M. DENISE DOTSON, LLC
170 Mitchell Street
Atlanta, Georgia 30309
(404) 526-8869

JAMES C. FRENZEL, P.C.

/s/ James C. Frenzel
James C. Frenzel
Georgia Bar No. 276830
Counsel for Prime Rate Premium Finance Corp.

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 266-9961

**Identification of parties to be served:**

Barbara Ellis-Monro, Esq., Ellenberg, Ogier, Rothschild & Rosenfeld, P.C., 170 Mitchell Street, S.W., Atlanta, GA 30303

James H. Morawetz, Esq., Office of the United States Trustee, 362 Richard B. Russell Building, 75 Spring Street, S.W., Atlanta, Georgia 30303

James C. Frenzel, Esq., James C. Frenzel, P.C., Suite 155, East Tower, 3343 Peachtree Road, N.E., Atlanta, Georgia 30326

M. Denise Dotson Esq., M. Denise Dotson, LLC, 170 Mitchell Street, Atlanta, Georgia 30309

Jeremy E. White, Esq., Molden Holley & Thompson, LLC, 225 Peachtree Street, NE, Suite 1900 Atlanta, GA 30303

Jordan B. Forman, Esq., Kaufman, Miller & Siversten, PC, Bldg. 800, 8215 Roswell Rd., Atlanta, GA 30350

Ted W. Hight, III, Esq., Thompson, O'Brien, Kemp & Nasuti, PC, Suite 300, 40 Technology Parkway South, Norcross, GA 30092

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

IN RE: : CHAPTER 11
:
HLA, INC., : CASE NO. 09-22026
:
Debtor. : JUDGE BRIZENDINE
_____ :

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the JOINT MOTION FOR APPROVAL OF AND AUTHORITY FOR DEBTOR TO ENTER PREMIUM FINANCE AGREEMENT upon all those parties listed below by depositing same in the U. S. mail in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Barbara Ellis-Monro, Esq.
Counsel for Hidden Lake Academy
Ellenberg, Ogier, Rothschild & Rosenfeld, P.C.
170 Mitchell Street, S.W.
Atlanta, GA 30303

M. Denise Dotson, Esq.
Counsel for HLA, Inc.
M. Denise Dotson, LLC
170 Mitchell Street
Atlanta, Georgia 30309

James H. Morawetz, Esq.
Office of the United States Trustee
362 Richard B. Russell Building
75 Spring Street, S.W
Atlanta, Georgia 30303

Jeremy E. White, Esq.
Counsel for Willie and Lee Locust
Molden Holley & Thompson, LLC
225 Peachtree Street, NE
Suite 1900
Atlanta, GA 30303

Jordan B. Forman, Esq.
Counsel for Jim Millman
Kaufman, Miller & Siversten, PC
Bldg. 800
8215 Roswell Rd.
Atlanta, GA 30350

Ted W. Hight, III, Esq.
Counsel for Morris Law Firm
Thompson, O'Brien, Kemp & Nasuti, PC
Suite 300
40 Technology Parkway South
Norcross, GA 30092

This 9th day of September, 2009.

                                            JAMES C. FRENZEL, P.C.

                                            /s/ James C. Frenzel
                                            James C. Frenzel
                                            Georgia Bar No. 276830
                                            Counsel for Prime Rate Premium Finance Corp.

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 266-9961
jcf-bklaw@mindspring.com