**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| HLA, INC., | ) | CASE NO. G09-22026-REB |
| | ) | |
| Debtor. | ) | JUDGE ROBERT E. BRIZENDINE |

## OBJECTION TO DEBTOR'S MOTION TO CONTINUE OPERATIONS IN ACCORDANCE WITH POST-PETITION BUDGET

**COMES NOW** Branch Banking and Trust Company ("BB&T"), the largest single unsecured creditor of HLA, Inc. ("HLA" or the "Debtor"), debtor and debtor-in-possession in the above-captioned action, and, pursuant to Bankruptcy Rules 2015 and 9014, herewith files its "Objection to Debtor's Motion to Continue Operations In Accordance With Post-Petition Budget" (the "Motion"). In support of its objection to the Motion, BB&T respectfully shows this Court as follows:

### I. STATUS OF THE CASE

1.

The Debtor filed the above-captioned action on May 14, 2009.

2.

Bankruptcy Rule 2015 and the United States Trustee's Operating Guidelines for Chapter 11 debtors in the Northern District of Georgia specify that a debtor must file its monthly operating report on or before the twentieth day of the month following the month that is the subject of the report.

WCSR 4220854v1

3.

On August 10, 2009 the Debtor filed what purported to be a Monthly Operating Report for the period from June 1, 2009 through June 30, 2009.  This handwritten report was rife with inconsistencies.  The figures listed on the report for income and expenses did not match the Debtor's actual financial operations, as reflected on its bank statements.  On the same day the Debtor filed a "Statement Regarding Monthly Operating Reports," wherein it conceded that the June report was not prepared in accordance with standard cash basis accounting, and was therefore not an accurate reflection of the Debtor's financial performance.

4.

On September 22, 2009, *more than ninety (90) days after it was due,* the Debtor filed its Monthly operating report for the stub period from the Petition Date to May 31, 2009.

5.

On September 10, 2009, the United States Trustee filed a Motion to Dismiss the above-captioned action, citing, among other causes, the Debtor's persistent failure to file its Monthly Operating reports.

6.

On October 12, 2009, with the Trustee's Motion to Dismiss set for an imminent hearing, the Debtor filed Monthly Operating Reports for June, July and August of 2009.  The July report was almost *sixty (60) days late*, and the August report was almost *thirty days past due*.

## II.  THE DEBTOR'S OPERATIONS

7.

The Debtor operates a school and other educational programs for troubled youth.

8.

The Debtor has an outstanding loan obligation to BB&T that has a current balance of principal and interest, as of September 16, 2009, that exceeds $6,964,487.23.

9.

Based on prior statements from the Debtor, the Debtor apparently operates three separate programs on its campus from which it generates gross revenues, namely:

- Hidden Lake Academy (the "School"), which is a traditional high school environment academy that allows students to make academic progress while they undergo counseling and treatment for their particular challenge;

- Ridge Creek, Inc. ("Ridge Creek"), which is a wilderness type program for troubled youth; and

- Creekside, which is a "halfway" program through which various county and municipal juvenile authorities can integrate juvenile offenders back into life outside of juvenile detention facilities.

10.

The Debtor has not filed any reports or other pleadings that clearly indicate the number of students that are enrolled in any of these three programs. Further, prior information from the Debtor has revealed serious inconsistencies regarding the amount of tuition that each student is paying, and whether and to what extent all of the students are actually paying tuition.

### III.  HIDDEN LAKE ACADEMY, INC.

11.

Hidden Lake Academy, Inc. ("Hidden Lake") executed an unconditional corporate guaranty for the repayment of all debts of the Debtor to BB&T (the "Guaranty").

12.

In order to secure payment under the Guaranty, Hidden Lake granted to BB&T a first-priority security interest in approximately 190 acres of real property situated outside of Dahlonega, Lumpkin County, Georgia (the "Property").

13.

The Debtor currently operates its related programs on the Property, but has no ownership interest in the Property.

14.

Hidden Lake has no independent source of income other than rental income accruing from a lease agreement between the Debtor and Hidden Lake that memorializes the terms and conditions under which the Debtor, and presumably Ridge Creek and Creekside, can occupy and use the Property.

15.

The only source of funds from which Hidden Lake to make adequate protection payments to BB&T during the pendency of Hidden Lake's bankruptcy case, In re Hidden Lake Academy, Inc., United States Bankruptcy Court for the Northern District of Georgia, Case No. G09-22028-REB, is the rental income to be paid from the Debtor, and presumably Ridge Creek and Creekside, to Hidden Lake.

16.

Hidden Lake and BB&T have entered into a Consent Order authorizing the use of cash collateral under which Hidden Lake has agreed to make specified monthly payments of $10,000.00, and later $20,000.00, to BB&T as partial adequate protection for BB&T's collateral security interest in the Property.

17.

If the Debtor and Ridge Creek are unable to make regular and timely payments of rent to Hidden Lake, there will be no way for Hidden Lake to comply with the terms of the Cash Collateral Order or propose a feasible and confirmable plan that adequately protects BB&T's security interest in the Property.

## IV.  THE DEBTOR'S FINANICAL OPERATIONS

18.

When BB&T first began examining the Debtor's financial circumstances in earnest, the Debtor's financial accounting systems were in a shambles.  By the admission of the Debtor's former Controller, the Debtor had not maintained adequate controls on expenditures, had not paid taxes in a timely manner, had not been able to pay its trade creditors or maintain its accounts payable in a timely manner, and had not observed proper accounting formalities regarding payments to and from insiders.

19.

BB&T has requested evidence of various alleged debt obligations outstanding from the Debtor to certain insiders, but the Debtor has been either unable or unwilling to provide the notes and other documentation evidencing these obligations.

WCSR 4220854v1

20.

The Debtor's most recent monthly operating reports do not indicate the number of students that are enrolled in each of the Debtor's programs, or the tuition that each student pays. Obviously, this information is crucial if creditors are to verify the quantity and source of the Debtor's gross operating revenue.

21.

The Monthly Operating Reports that the Debtor filed on October 12, 2009 reflect the following net income levels for the Debtor:

|  | **June, 2009** | **July, 2009** | **August, 2009** |
|---|---|---|---|
| Total Income | $52,313.41 | $120,422.47 | $87,030.30 |
| Total Disbursements | $102,312.66 | $120,187.57 | $118,390.43 |
| Net Operating Income | ($49,999.23) | $234.90 | ($31,360.13) |

22.

Although the Debtor's Monthly Reports are not internally consistent, *the Debtor has posted an operating loss of $81,981.97 ($350,208.18 – $432,190.15) in the period between the Petition Date and August 31, 2009*. The Debtor's operating expenses have consumed its pre-petition cash position of $69,734.06, and it is left with a deficit cash position post-petition of -$12,247.91.

23.

There is no Committee of Unsecured Creditors in this Case. It is therefore important for the Court and the United States Trustee to note that *the Debtor has significantly increased its*

- 6 -

WCSR 4220854v1

***post-petition accounts payable since the Petition Date***.  The Debtor's accounts payable have increased since the Petition Date as follows:

|  | **June, 2009** | **July, 2009** | **August, 2009** |
| --- | --- | --- | --- |
| Beginning Post-Petition Accounts Payable | $41,485.37 | $71,443.52 | $99,534.70 |
| Ending Post-Petition Accounts Payable | $71,443.52 | $99,534.70 | $91,780.59 |
| Net Increase in Post-Petition Accounts Payable | $29,985.15 | $28,091.18 | ($7,754.11) |

In short, the poor accounting and spending practices that led the Debtor to bankruptcy have apparently continued unabated post-petition, and will likely lead to a case that is administratively insolvent.

24.

Further, the Debtor is not paying its post-petition tax obligations in a timely manner.  The Debtor's Monthly Operating Report for August, 2009 reflects that on September 29, 2009 the Debtor was finally able to make the payment for Federal and State payroll taxes due on May 21, 22 and 29, 2009.  This payment was made some ***four months after the applicable taxes were due.***  This situation has apparently continued post-petition, and on October 2, 2009 the Debtor was able to make a $17,144.38 payment for July and August, thus leaving an apparent tax balance due for September, 2009.

25.

If the Debtor's monthly reports are now accurate, it is clear that the Debtor, including Ridge Creek, will not have sufficient net operating revenue to make rent payments to Hidden Lake.  The Debtor's rent payments to Hidden Lake, including sums due from Ridge Creek, are the sole source from which Hidden Lake can make appropriate debt service payments to BB&T,

- 7 -

either as post-petition adequate protection under the Cash Collateral Order or subsequent to the confirmation of a plan. In short, absent compelling proof that the Debtor can generate net operating income, it is readily apparent that any plan that Hidden Lake proposes will not be feasible, and will therefore be facially unconfirmable under 11 U.S.C. 1129(A)(11).

## V. THE DEBTOR'S FINANCIAL PROJECTIONS

26.

The Debtor has attached to its Motion a proposed budget that looks forward through August, 2010 (the "Budget"). As a threshold matter, the Budget is not an accurate source of information because:

1) It does not detail whether it includes revenue from Ridge Creek or Creekside. Presumably it does, since it is BB&T's understanding that these entities are subsidiaries or affiliates of the Debtor;

2) The "income" attributed to Hidden Lake is not additional income from an unrelated source that would increase the total amount of revenue available to the Debtor. Instead, any "income" for Hidden Lake is simply recirculation of previously counted income out of the Debtor, and possibly Ridge Creek, into Hidden Lake ….. the Debtor cannot be allowed to count this income twice in proposing its Budget.

27.

The Debtor's budgeted gross income for September, 2009 is $264,195. This is almost fanciful when one considers that the Debtor's receipts for August, 2009 were $87,030.00.

WCSR 4220854v1

28.

The Debtor's budgeted income increases exponentially from September, 2009, posting a 227% increase over the next twelve months.  If this were an attainable goal, it would be the hallmark of one of the greatest business turnarounds in this decade, particularly in light of the current economic climate.

29.

In accordance with its habit and practice, the Debtor has not provided any projections of actual student enrollment or actual tuition in order to justify this enormous growth in revenue.  ***It is simply unrealistic to think that the Debtor's projected growth in gross revenue is feasible absent reliable and detailed data as to how many new students are going to enroll in the Debtor's programs and the means by which the Debtor will locate and secure these students.***

30.

By the Debtor's own incredibly ambitious forecast, the Debtor will not generate positive cash flow until December, 2009, and will not generate net cash flow sufficient to pay debt service under a confirmed plan until February, 2010.

## VI. CONCLUSION

31.

The Debtor is operating a failing business that is bleeding money on a monthly, if not daily, basis.  The objective numbers in the Monthly Operating Reports highlight the fact that the Debtor cannot cover its monthly expenses with the revenue that it receives from the students that are currently enrolled in its programs.

WCSR 4220854v1

32.

The budget attached to the Debtor's Motion evidences unbridled optimism for the future. Sadly, this Debtor maintained similar optimism for at least the two years pre-petition, during which time the Debtor made continued unfulfilled promises to BB&T regarding its future. The Debtor has moved from one BB&T deadline to the next, always with the promise that the situation arising out of the class action lawsuit had abated, and that the Debtor was enrolling new students and beginning down the road to profitability. The Debtor's projections have not materialized.

33.

In light of the Debtor's continuing dismal financial performance, BB&T requests that the Court deny the Debtor's request to operate for another ninety days. Instead, BB&T suggests that the Court allow the Debtor to continue to operate in thirty day increments, and require the Debtor to submit timely, complete and detailed records of how many students it has enrolled in each of its programs and the precise amount that each student is paying in tuition.

34.

If the Debtor's financial performance does not improve during September and October, 2009, then November, 2009 will be an opportune juncture for this Court to determine that the Debtor cannot survive, and make a pronouncement, either by converting this Case or appointing a Chapter 11 Trustee, that the Debtor should be shut down at the end of the Fall Semester. This would allow the students to make an orderly transition from the Debtor's programs and secure a new opportunity for the Spring Semester, 2010.

**WHEREFORE**, BB&T respectfully moves this Court for an order as follows:

WCSR 4220854v1

1) Denying the Debtor's Motion: and

2) Authorizing the Debtor to operate for thirty days, through and including November 13, 2009: and

3) Compelling the Debtor to file, on or before October 19, 2009, and on the fifth day of each month thereafter, a complete and detailed summary of the students enrolled in each of its programs and the tuition revenue from each student; and

4) Setting a hearing as close as possible to November 13, 2009 to determine whether it is appropriate for the Debtor to continue operations, or whether it is more appropriate to convert this case and terminate the Debtor's school operations.

Respectfully submitted, this 13th day of October, 2009.

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

By: /S/ John A. Thomson, Jr.
John A. Thomson, Jr.
State Bar No. 706760

**Attorney for Branch Banking & Trust Company**

271 17th Street, N.W.
Suite 2400
Atlanta, Georgia 30363-1017
(404) 888-7409 direct phone
(404) 870-4841 direct fax
jthomson@wcsr.com

- 11 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 13, 2009, a true and correct copy of the within and foregoing **OBJECTION TO DEBTOR'S MOTION TO CONTINUE OPERATIONS IN ACCORDANCE WITH POST-PETITION BUDGET** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| M. Denise Dotson, Esq. | Office of the United States Trustee |
| ATTORNEY FOR THE DEBTOR, INC. | 362 Richard B. Russell Building |
| M. Denise Dotson, LLC | 75 Spring Street, S.W. |
| 170 Mitchell Street, S.W. | Atlanta, Georgia  30303 |
| Atlanta, GA  30303 | |

The undersigned hereby further certifies that a true and correct copy of the above pleading has been served by placing same in the United States postal service with proper postage affixed thereto and addressed to the following:

| | |
|---|---|
| HLA, Inc. | Hidden Lake Academy, Inc. |
| 1950 North Park Place | 830 Hidden Lake Road |
| Suite 400 | Dahlonega, GA 30533 |
| Atlanta, GA 30339 | |

Barbara Ellis-Monro, Esq.
ATTORNEY FOR HIDDEN LAKE ACADEMY, INC.
Ellenberg, Ogier, Rothschild & Rosenfeld, P.C.
170 Mitchell Street, S.W.
Atlanta, GA 30303


This 13th day of October, 2009.

    /S/  John A. Thomson, Jr.
John A. Thomson, Jr.
State Bar No. 706760

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
271 17th Street, N.W.
Suite 2400
Atlanta, Georgia 30363-1017
(404) 888-7409 direct phone
(404) 870-4841 direct fax
jthomson@wcsr.com

WCSR  4220854v1