**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CHAPTER 11** |
| **HLA INC.,** | ) | |
| | ) | **CASE NO.  09-22026-REB** |
| **Debtor.** | ) | |

---

**DISCLOSURE STATEMENT FOR**
**PLAN OF REORGANIZATION**
**FOR HLA, INC.**

**Dated this 30th day of October, 2009**

---

Filed by:

HLA, INC.

Attorneys for Debtor and Debtor in Possession,
M. Denise Dotson
M. Denise Dotson, LLC
170 Mitchell Street, SW
Atlanta, GA 30303
(404) 526-8869 Telephone
(404) 526-8855 Facsimile
ddotsonlaw@me.com

## Disclaimer

*All Creditors and Holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.*

*This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in the Debtor with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.*

*As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.*

*The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.*

*This Disclosure Statement shall not be admissible in any nonbankruptcy proceeding involving the Debtor and any party, nor shall it be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtor; provided, however, that in the event the Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default.*

THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR. NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THIS PLAN WHICH IS OTHER THAN AS CONTAINED IN THIS DOCUMENT SHOULD NOT BE RELIED UPON BY ANY PERSON. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. EVERY EFFORT, HOWEVER, HAS BEEN MADE TO PROVIDE ADEQUATE FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT. THE REPRESENTATIONS BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH EVERY EFFORT HAS BEEN MADE TO BE ACCURATE. NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAS BEEN DESIGNED TO FORECAST CONSEQUENCES WHICH FOLLOW FROM A GENERAL REJECTION OF THIS PLAN, ALTHOUGH AN ATTEMPT IS MADE TO STATE THE CONSEQUENCES OF A LIQUIDATION OF THE DEBTOR.

## I.    __Introduction and General Information__

This disclosure statement ("Disclosure Statement") is submitted by HLA, Inc. (the "Debtor"), to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by the Debtor.  This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition history and events that have occurred during the Debtor's Chapter 11 case.  This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in the Debtor's Chapter 11 case, and financial information.  Although the Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions.  Factual information contained in this Disclosure Statement has been provided by the Debtor's management, except where otherwise specifically noted.  The Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission.  The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving the Debtor or any other party; provided, however, that in the event the Debtor default under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of the Debtor's Plan as to holders of Claims or Interests.  You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties.  Although the Debtor have used their best efforts to be accurate in making these statements, it is possible that the assumptions made by the Debtor may not materialize.  In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

Parties voting on the Plan should read both the Plan and this Disclosure Statement.

A.    **Definitions**

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.  In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan.

B.    **The Disclosure Statement**

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guarantee of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtor and all holders of Claims against and Interests in the Debtor, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan.  Thus, you are encouraged to read this Disclosure Statement carefully.  In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan.  This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

II.    **Voting on the Plan  and Confirmation Process**

A.    **Voting Instructions**

Accompanying this Disclosure Statement are copies of the following documents:  (1) the Plan; (2) a Notice to Voting Classes; and (3) a Ballot to be executed by Holders of Claims in Classes 1 through 9 (the "Voting Classes"); which classes are entitled to vote to accept or reject the Plan.  The Ballot contains voting instructions.  Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in the Voting Classes for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, the law offices of M. Denise Dotson, LLC, 170 Mitchell Street, SW, Atlanta, GA 30303 (404) 529-8869 (Attn: M. Denise Dotson, Esq.).

4

IN ORDER FOR YOUR BALLOT TO COUNT IT MUST BE RECEIVED WITHIN THE TIME INDICATED ON THE BALLOT AND THE BALLOT MUST CLEARLY INDICATE YOUR CLAIM, THE CLASS OF YOUR CLAIM, AND THE AMOUNT OF YOUR CLAIM.

BY ENCLOSING A BALLOT, THE DEBTOR ARE NOT ADMITTING THAT YOU ARE ENTITLED TO VOTE ON THE PLAN, IS NOT ADMITTING THAT YOUR CLAIM IS ALLOWED AS SET FORTH ON THE BALLOT, AND ARE NOT WAIVING ANY RIGHTS TO OBJECT TO YOUR VOTE OR YOUR CLAIM.

### B.    Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan.  As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote.  Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (1) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in the Debtor's Schedules as other than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount.  In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes.  <u>Accordingly, if you did not receive a Ballot and believe that you are entitled to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes.</u>

THE DEBTOR IN ALL EVENTS RESERVES THE RIGHT THROUGH THE CLAIM RECONCILIATION PROCESS TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM FOR DISTRIBUTION PURPOSES UNDER THE PLAN.

### C.    Requirements of Confirmation

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met.  Those requirements include the following:

1. The Plan classifies Claims and Interests in a permissible manner;

2. The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3.    The Plan has been proposed in good faith and not by any means forbidden by law;

4.    The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5.    The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, the Plan must also be approved by all Impaired Classes of Claims entitled to vote.  If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Class.  The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders.  Debtor will seek to "cram down" the Plan if it is accepted by an Impaired Class over the objections of a dissenting class.

**D.    Acceptance or Rejection of the Plan and Cram Down**

The Class containing your Claim will have accepted the Plan by the favorable vote of majority in number and two-thirds in amount of Allowed Claims actually voting.   In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if you retain your lien and receive deferred cash payments totaling the allowed amount of your Claim as of the Effective Date of the Plan, the collateral is sold and your Lien attaches to the proceeds of the sale, or you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim.  If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the allowed amount of your Claim or if no junior Class receives or retains anything under the Plan.

**E.    Confirmation Hearing**

The Bankruptcy Court has entered an order (the "Scheduling Order") that schedules a final hearing to approve the Disclosure Statement and to consider confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order Approving Disclosure Statement and Notice of Confirmation Hearing.  The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing.

### F.      Objections to Confirmation

As will be set forth in the Scheduling Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtor.  The Scheduling Order contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

### G.      Whom to Contact for More Information

If you have any questions about the procedure for voting your Claim or the packet of materials you received, please contact M. Denise Dotson at the address indicated below or by telephone at (404) 526-8869.  If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact the law offices of M. Denise Dotson, LLC, 170 Mitchell Street, Atlanta, GA 30303, Attn:  Denise Dotson; or by facsimile at (404) 526-8869, or by electronic mail, at ddotsonlaw@me.com.

### III.    Historical Background

### A.      Description of the Debtor

Debtor, a non-profit Georgia corporation, began operations in 1994.  HLA operated as a therapeutic boarding school that offered educational and counseling services in a therapeutic environment to adolescents experiencing serious struggles with emotional and behavioral issues including, without limitation, oppositional-defiant behavior, depression, addiction disorders, and attention deficit disorders.  HLA sought to help a child develop physically, academically, socially, spiritually, and emotionally.  HLA's typical program ran for approximately eighteen (18) months, however, the length of the program may vary depending upon each individual child.

HLA is a licensed child care institution with the Georgia Department of Human Services and is accredited by the Southern Association of Colleges and Schools, Sothern Association of Independent Schools, and Georgia Accrediting Commission.  HLA is also a member of Georgia Independent School Association.

Debtor's sole officer is Kenneth Spooner.  Mr. Spooner is not involved in Debtor's daily operations and does not receive a salary from the Debtor.  Debtor's daily operations are run by a management team which provided by Hidden Lake Academy pursuant to a management agreement.  Hidden Lake Academy ("Hidden Lake") is an affiliated entity that owns the real property located at 830 Hidden Lake Road, Dahlonega, Georgia ("Real Property") where the Debtor operated.  The Real Property consists of approximately 200 acres of land and numerous buildings.  Hidden Lake also filed for bankruptcy protection under Chapter 11 of Title 11 of the Bankruptcy Code.

### B.    Related Entities

Hidden Lake. is a Georgia profit corporation that owns and leases the Real Property to HLA.  Hidden Lake's sole shareholder and officer are Dr. Leonard Buccellato ("Dr. Buccellato").  Dr. Buccellato is part of the management group that oversees the day to day operations of HLA.

Ridge Creek, Inc. ("Ridge Creek") is a Georgia profit corporation that incorporated in 2000.  Dr. Buccellato is the sole shareholder and officer of Ridge Creek.  Ridge Creek leases premises and property from the Debtor and Hidden Lake.  Hidden Lake's curriculum includes a twenty-eight (28) day wilderness program and a therapeutic boarding school.  The programs at the therapeutic boarding school vary in length and focus on providing services to adolescents with emotional and behavioral issues including, without limitation, oppositional-defiant behavior, depression, addiction disorders, and attention deficit disorders.  HLA's sole source of revenue to fund the plan will be the monthly rental income generated from leasing facilities and premises to Ridge Creek.  Ridge Creek began full school operations in September 2009. Enrollment as of the filing of this Disclosure Statement is approximately thirty-eight (38).

### C.    Prepetition Assets and Liabilities

The Debtor's assets as of the date of the Filing Date consisted of personal property valued at $3,102,143.45. Debtor does not own any real property. Debtor's personal property included: (a) accounts receivable with a book value of $1,726,537.45 (which includes a receivable from an affiliated entity Ridge Creek Schools totaling approximately $1,470,750.13; (b) vehicles valued at $32,000.00; and (c) office furniture, buildings, and supplies with a book value of $1,343,606.00.

As of the Filing Date, Debtor's estimated liabilities totaled $10,172,452.55 and included the following: (a) secured claims totaling $49,627.55; (b) priority claims totaling $991,000.00; and (c) unsecured claims totaling $9,131,825.00.

As of the filing of this Disclosure Statement, seventeen (17) proofs of claim have been filed.  Claims filed total $13,361,823.26 and consist of: (a) unsecured claims totaling $11,974,178.31; (b) secured claims totaling $205,753.32; and (c) priority claims totaling $1,181,891.63.

## IV.    The Chapter 11 Case

### A.    Reasons for Filing Chapter 11

HLA began experiencing difficulties in 2006.  In March of 2006, the business manager resigned.  After the resignation, the Debtor determined that certain taxes and vendors remained unpaid.  The replacement business manager was terminated after approximately two (2) months.

On September 11, 2006, a class action complaint was filed in the United States District Court for the Northern District of Georgia, Gainesville Division ("District Court"), case no. 06-

CV-0146, captioned *Jill Ryan and Ryan, and Doff Meyer and Robin Brecker, individually and on behalf of others similarly situated ("Plaintiffs") vs. Hidden Lake Academy, Inc., HLA, Inc., Hidden Lake Foundation, Inc[1]., and Dr. Leonard Buccellato* ("District Court Litigation").   In their complaint ("Complaint"), the Plaintiffs asserted the following four causes of action: (i) breach of contract against HLA; (ii) breach of the implied covenant of good faith and fair dealing; (iii) violations of Georgia's fair business practices act against HLA, the Academy, Hidden Lake Foundation, Inc. and Dr. Leonard Buccellato (collectively, HLA, the Academy, Hidden Lake Foundation, Inc. and Dr. Leonard Buccellato are referred to herein as the "Defendants"); and (iv) unjust enrichment against the Defendants.  A summary of the pleadings and resolution of the District Court Litigation is set forth below:

   a. answer to Complaint and counter-claim filed by HLA on November 8, 2006;
   b. answers to Complaint filed by the Academy, Hidden Lake Foundation, Inc., and Dr. Leonard Buccellato on November 10, 2006;
   c. motion filed by the Plaintiffs seeking permission to proceed anonymously filed on November 16, 2006 and response in opposition thereto filed by the Defendants on December 6, 2006;
   d. motion for judgment on the pleadings with supporting briefs filed by the Defendants on November 21, 2006,  response in opposition thereto filed by Plaintiffs on December 18, 2006, and reply brief filed by Defendants on January 16, 2007;
   e. motion to dismiss HLA's counterclaim filed by Plaintiffs on November 28, 2006, response in opposition thereto filed by HLA on December 22, 2006; and
   f. motion to certify class filed by Plaintiffs on December 11, 2006, response in opposition thereto filed by Defendants on December 29, 2006, and reply brief filed by Plaintiffs on January 19, 2007;

   With respect to the motions set forth above, the District Court entered the following orders:

   a. order denying Plaintiff's motion to proceed anonymously entered on February 9, 2007;
   b. order granting Plaintiff's motion to dismiss HLA's counterclaim entered on March 26, 2007;
   c. order granting in part and denying in part Defendant's motion for judgment on the pleadings entered on April 2, 2007 wherein, the District Court dismissed the following claims (i) Meyer and Brecker's claims brought under Georgia's fair business practices act, (ii) Ryans' claim against Hidden Lake Foundation, Inc., and Dr. Leonard Buccellato brought under Georgia's fair business practices act; (iii) Plaintiffs' unjust enrichment claim against HLA; and (iv) plaintiffs' request for injunctive relief; and

---

[1] Hidden Lake Foundation, Inc. is a nonprofit corporation that raises funds for the school.

    d.  order denying, without prejudice, Plaintiff's motion to certify class entered on August 15, 2007.

A settlement agreement resolving the District Court Litigation was reached by the parties. On October 24, 2008, the District Court entered an order and final judgment which approved the settlement agreement and closed the case. The Clerk of the District Court issued a writ of execution on February 18, 2009.

As a result of the District court Litigation, HLA and the other defendants incurred substantial legal expense which was not covered by insurance. Enrollment declined during the District Court Litigation and the negative publicity associated therewith. Additionally, the overall economic downturn negatively impacted enrollment.

Unfortunately, during the litigation and other issues, HLA's financial resources were depleted. HLA was unable to pay certain obligations including, without limitation, rent, taxes, and the settlement. At the time of the filing, a BB&T had scheduled a foreclosure on the Real Property.

The litigation, negative publicity, downturn in the economy, and reduction in enrollment necessitated a bankruptcy filing in order to reorganize Debtor's financial affairs.

### B.    <u>Professionals</u>

On June 9, 2009, Debtor filed an application ("Application") requesting authorization to retain the law firm of M. Denise Dotson, LLC ("J&W") to serve as bankruptcy counsel in this case. On June 10, 2009, the Court entered an order approving the Application.

### C.    <u>Schedules</u>

On June 8, 2009, Debtor filed its schedules and statement of financial affairs. Debtor subsequently amended its schedules and statement of financial affairs. A copy of the schedules and statement of financial affairs can be reviewed at the Office of the Bankruptcy Clerk, Room 120, 121 Spring Street, SE, Gainesville, Georgia, 30501 during normal business hours or online at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users).

### D.    <u>Payments to Creditors Within the Ninety (90) Days Prior to the Filing Date</u>

Payments to creditors during the ninety (90) days prior to the Filing Date are set forth in the schedules and statement of financial affairs.

Under the Bankruptcy Code, Debtor may seek to avoid and recover certain transfers that occur within the ninety (90) days prior to the Filing Date as preferential under Sections 547 and 550 of the Bankruptcy Code. The transfers that may be subject to avoidance and recovery must aggregate in value over $5,475.00. Debtor continues to review transfers that may be subject to

avoidance and recovery. Debtor reserves the right to pursue any and all actions it deems appropriate and nothing herein shall be construed as a waiver of any claims or causes of action. Debtor does not anticipate any substantial recovery from preference litigation. Debtor is not aware of any fraudulent conveyance actions.

### E.    Payments to Insiders Within One (1) Year Prior to the Filing Date

Payments made to or for the benefit of insiders were made within the one (1) year period prior to the Filing Date. A list of all transactions for the one year period from May 2009 through May 2009 is attached hereto and incorporate herein by reference as Exhibit "A."

### F.    Payroll Motion

On May 14, 2009, Debtor filed a motion requesting entry of an order authorizing the payment of prepetition wages, salaries, and taxes ("Payroll Motion"). An expedited hearing on the Payroll Motion was held on May 20, 2009 and an order authorizing the payment of prepetition wages, salaries, and taxes was entered on May 20, 2009.

### G.    Budget Motion

On May 20, 2009, Debtor filed a motion requesting entry of an order authorizing the use of cash to pay post-petition operating expenses in accordance with a budget or, alternatively, authorizing the use of cash collateral (as that term is defined by the Bankruptcy Code) ("Budget Motion") to the extend any creditors had an interest in cash collateral. The Court conducted an expedited hearing to consider the Budget Motion and an order authorizing the use of cash was entered. The order authorized the use of cash on an interim basis and the Court entered subsequent orders authorizing the continued use of cash on July 28, 2009 and September 25, 2009. The order entered on September 25, 2009, authorized the continued use of cash, subject to objection, through and including October 14, 2009. The Court conducted a hearing to consider the Budget Motion on October 14, 2009. The Court authorized the continued use of cash in accordance with the budget through November 19, 2009, at which time another hearing to consider further use will be held.

### H.    Utility Motion

On June 1, 2009, Debtor filed a motion to continue utility services and to establish a procedure for utility providers to request adequate assurance of future performance ("Utility Motion"). The Court held an expedited hearing on the Utility Motion on June 2, 2009 and entered an order approving the Utility Motion on June 3, 2009.

### I.    Bar Motion

On October 12, 2009, Debtor filed a motion requesting entry of an order establishing a bar date for filing proofs of claim and to establish a procedure for certain creditors to file redacted proofs of claim ("Bar Motion"). In the Bar Motion, Debtor requested that the Court

establish a deadline of December 31, 2009 to file proofs of claim and to establish a procedure by which certain creditors, specifically, parents or representatives of former students could submit claims and protect personal privacy.  An order is pending before the Court.

J.    **Motion to Dismiss**

United States Trustee

The Office of the United States Trustee filed a motion requesting to either dismiss or convert the HLA bankruptcy case.  A preliminary hearing was held on October 14, 2009,  The Court continue the hearing until November 19, 2009.  At the hearing on October 14, 2009, counsel for the Debtor announced that all requested documentation had been filed or provided to the United States Trustee.  Counsel for the Debtor further announced that the parties had agreed that a plan and disclosure statement must be filed on or before October 31, 2009.  In the event a plan and disclosure statement are not timely filed, the United States Trustee may submit an order dismissing the case without further order or notice.

Georgia Department of Revenue

On October 22, 2009, Georgia Department of Revenue ("GDR") filed a motion ("GDR Dismissal Motion") requesting entry of an order dismissing the case due to failure to pay post-petition taxes.  A hearing on the GDR Dismissal Motion is scheduled for November 19, 2009. Counsel for the Debtor has conferred with counsel for GDR and is in the process of forwarding documentation establishing payment of post-petition taxes.

V.    **Summary of the Plan**

**The following summary of the Plan provides only a brief description of its provisions.  The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for an equitable distribution to Debtor's creditors and preserves the Debtor's ongoing business operations.  The Debtor believe that any alternative to confirmation of the Plan, such as liquidation or attempts by other parties in interest to file a competing plan, would result in significant delays and/or impaired recoveries.  Moreover, the Debtor believes that the creditors will receive greater and earlier recoveries under the Plan than those that would be achieved in liquidation or under an alternative plan. FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.

The Plan contemplates the reorganization the Debtor and the resolution of the outstanding Claims against and Interests in the Debtor pursuant to sections 1129(b) and 1123 of the Bankruptcy Code.  The Plan classifies all Claims against and Interests in the Debtor into separate Classes.

**VI.** **Description of the Plan**

    **A.** **Retention of Property by the Debtor**

Upon confirmation, the Reorganized Debtor will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors. The Reorganized Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by the Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in the Debtor's Schedules).

    **B.** **Continuation of Business Operations**

Following confirmation, the Reorganized Debtor will continue as a lessor of facilities and premises to Ridge Creek. Debtor will derive its revenue from the rental income generated from the lease agreement with Ridge Creek.

    **C.** **Parties Responsible for Implementation of the Plan**

Upon confirmation, the Reorganized Debtor will be charged with administration of the Case. The Reorganized Debtor will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's office. The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as possible after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation.

    **D.** **Liabilities of the Reorganized Debtor**

The Reorganized Debtor will not have any liabilities except those expressly assumed under the Plan. The Reorganized Debtor will be responsible for all Operational Expenses (defined as the normal and ordinary costs and expenses of operating the Debtor's business, including, without limitation, payroll and related taxes, insurance premiums, bank charges, maintenance costs, inventory costs, and all other costs of operations of any type arising after the Petition Date in connection with the operation of the Debtor's business, unless specifically excluded under the Plan) incurred by the Debtor in the ordinary course of business after the Filing Date, and those Operational Expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the Operational Expense claim.

    **E.** **Funding of the Plan**

The Debtor shall pay all claims from the Debtor's postpetition operational income. Debtor's post-petition income shall be derived from rental income earned from leasing its

buildings, equipment, furniture, and fixtures to Ridge Creek. A copy of the sublease by and between HLA and Ridge Creek is attached hereto and incorporated herein by reference as Exhibit "B." The rental income received by the Debtor serves as the funding source for the Plan. Debtor determined that the lengthy and ongoing negative publicity regarding HLA, rendered continued operations impossible.

The Plan provides that the Debtor shall act as the Disbursing Agent to make payments under the Plan unless the Debtor appoints some other entity to do so. The Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. The Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

Copies of Debtor's cash flow statement, prepetition balance sheet, and federal tax returns are attached hereto as Exhibits "C", "D", and "E". Attached hereto as Exhibit "F" is projected budgets for HLA, Hidden Lake, and Ridge Creek. Profit/Loss Statements for Ridge Creek are attached hereto as Exhibit "G."

### F.    Provisions Regarding Executory Contracts

PLEASE PROVIDE INFORMATION REGARDING WHICH LEASES AND EXECUTORY CONTRACT HLA WANTS TO ASSUME AND ASSIGN TO RIDGE CREEK OR REJECT.

Nothing herein constitutes nor should it be construed as an admission or waiver of Debtor's rights to seek to challenge the agreements and request a legal determination that such agreements constitute financing agreements. Debtor asserts that all obligations due and owing under the executory contracts and unexpired leases to be assumed hereunder are current. Any party that asserts a cure claim shall file a request for determination of cure claim on or before sixty (60) days after mailing of notice of the Confirmation Order. Any requests for determination of cure claim not filed on or before sixty (60) days after mailing of notice of the Confirmation Order will be waived and forever barred and the amounts determined to be due and owing by the Debtor shall become binding upon the parties and their successors, assigns, or heirs. Any allowed cure amounts will be paid in six (6) equal monthly installments beginning the first month after the Effective Date of the Plan.

Any unexpired leases or executory contracts which are not assumed or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after mailing of notice of the Confirmation Order. Any claims which are not timely filed will be disallowed and discharged.

### G.    Avoidance Actions and Retained Rights

The Plan provides that the Debtor shall retain all rights of action against others. The Plan also provides that the Debtor shall retain "Avoidance Actions" under chapter 5 of the Bankruptcy Code.

The Debtor may also have Claims against others which are retained. Notwithstanding the foregoing, the Debtor is reviewing records and believes there are potential preference claims. Further, the Debtor is not aware of any fraudulent conveyance claims.

### H.    Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below. A complete description of the treatment of each Class is set forth in Article 4 of the Plan.

A chart summarizing each Class and the proposed distribution for each Class is set forth below. A detailed discussion of each non-Insider Class follows this chart.

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|
| 1 | Secured Tax Claim of the Georgia Department of Revenue | No | Yes | Payable in 60 monthly installments with interest accruing at 5% annually |
| 2 | Priority Tax Claim of the Georgia Department of Revenue | No | Yes | Payable in 60 monthly installments with interest accruing at 5% annually |
| 3 | Priority Tax Claim of the Internal Revenue Service | No | Yes | Payable in 60 monthly installments with interest accruing at 5% annually |
| 4 | Secured Tax Claim of the Georgia Department of Labor | No | Yes | Payable in 60 monthly installments with interest accruing at 5% annually |
| 5 | Priority Tax Claim of the Georgia Department of Labor | No | Yes | Payable in 60 monthly installments with interest accruing at 5% annually |
| 6 | Unsecured Claim of BB&T Arising From and in Connection with the Real Property | No | Yes | Paid pursuant to the terms and conditions of Hidden Lake plan. |
| 7 | Unsecured Claims of Trade Creditors | No | Yes | Semi-annual installment payments for five (5) years generating a total distribution equivalent to 5% of the Allowed Claim |

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|
| 8 | Unsecured Penalty Claims of Taxing Authorities | No | Yes | No distribution under the Plan |
| 9 | Unsecured Claims Arising From Reimbursement of Tuition | No | Yes | Semi-annual installment payments for five (5) years generating a total distribution equivalent to 5% of the Allowed Claim |
| 10 | Insider Claims | Yes | Yes | No distribution |

6.1    Tax Claims.

6.1.1 <u>Class 1: Secured Tax Claim of the Georgia Department of Revenue</u>.  Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 5% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Georgia Department of Revenue filed a proof of claim asserting a total claim in the amount of $397,156.44 ("GDR Claim").  The GDR Claim is comprised of a secured claim in the amount of $99,894.40, a priority claim in the amount of $252,514.83, and an unsecured claim in the amount of $44,747.43.  The secured claim asserted by GDR in the amount of $99,894.40, consists of principal in the amount of $53,641.74, interest in the amount of $16,626.33 and penalties in the amount of $29,626.33. The Class 1 Claim shall consist of principal and interest as of the Filing Date totaling $70,268.08.  The penalty portion of the claim shall be treated as a Class 8 Claim.  Debtor estimates the monthly payment to the Claim Holder will total approximately $1,326.05.

The Class 1 Claim Holder is Impaired and is entitled to vote to accept or reject the Plan.

6.2    Class 2.   Priority Tax Claim of the Georgia Department of Revenue.   Class 2 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 5% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Georgia Department of Revenue filed a proof of claim asserting a total claim in the amount of $397,156.44 ("GDR Claim").  The GDR Claim is comprised of a secured claim in the amount of $99,894.40, a priority claim in the amount of $252,514.83, and an unsecured claim in the amount of $44,747.43.  The priority claim asserted by GDR in the amount of $252,514.83, consists of principal in the amount of $194,458.42 and interest in the amount of $58,056.41.  Debtor estimates the monthly payment to the Claim Holder will total approximately $4,765.27.

The Holder of the Class 2 Claim is Impaired and is entitled to vote to accept or reject the Plan.

6.3    Class 3.   Class 3.   Priority Tax Claim of the Internal Revenue Service.   Class 3 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 5% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy

Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Internal Revenue Service filed a proof of claim asserting a total claim in the amount of $1,115,799.66 and the priority portion of this claim totals $904,915.94. Debtor estimates the monthly payment to the Claim Holder will total approximately $17,076.88.

The Holder of the Class 3 Claim is Impaired and is entitled to vote to accept or reject the Plan.


6.4    <u>Class 4</u>. Class 4 consists of the Secured Tax Claim of the Georgia Department of Labor.   Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 5% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Georgia Department of Labor filed a proof of claim asserting a total claim in the amount of $123,166.78 consisting of a secured claim in the amount of $105,858.92 and a priority claim in the amount of $17,307.86. Debtor estimates the monthly payment to the Claim Holder will total approximately $1,997.69.

The Holder of Class 4 Claim is impaired and is entitled to vote to accept or reject the Plan.

6.5      <u>Class 5</u>  Class 5 consists of the Priority Tax Claim of the Georgia Department of Labor.   Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 5% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Georgia Department of Labor filed a proof of claim asserting a total claim in the amount of $123,166.78 consisting of a secured claim in the amount of $105,858.92 and a priority claim in the amount of $17,307.86.  Debtor estimates the monthly payment to the Claim Holder will total approximately $326.62.

The Holder of the Class 5 Claim is impaired and entitled to vote to accept or reject the Plan.

6.6      <u>Class 6</u>. Class 6 consists of the Unsecured Claim of BB&T Arising From And In Connection With the Real Property.  BB&T filed proof of claim number 16 in the amount of $6,964,487.23 ("Class 6 Claim").  The Class 6 Claim is secured by the Real Property owned by Hidden Lake.  The Class 6 Claim will be paid in accordance with the terms and conditions set forth in the Plan filed by Hidden Lake.  BB&T will not receive any distributions under the Plan confirmed in the HLA case.

The Class 6 Creditor is Impaired and is entitled to vote to accept or reject the Plan.

The Holder of the Class 6 Claim is impaired and entitled to vote to accept or reject the Plan.

6.7    Class 7. Class 7 consists of the Unsecured Claims of Trade Creditors.  Holders of Allowed Class 7 Claims shall receive a distribution equivalent to five (5%) percent of the Allowed Claim payable in semi-annual installments over the next five (5) years.   The distributions shall occur on the fifteenth (15th) business day in the months of April and October. A chart illustrating the potential Class 7 Claimants is set forth on Exhibit "H" attached hereto and incorporated herein by reference.  Exhibit H includes creditors that have filed proofs of claim and undisputed claims.  A separate listing on Exhibit H lists creditors holding disputed claims.  Holders of disputed claims must file proofs of claim by the proof of claim deadline.  For purposes of the Plan, Debtor is assuming all disputed creditors will file proofs of claim.

The Holder of the Class 7 Claim is impaired and entitled to vote to accept or reject the Plan.

6.8    Class 8. Class 8 consists of the Unsecured Penalty Claims Asserted by the Internal Revenue Service, Georgia Department of Revenue and Georgia Department of Labor (collectively the "Taxing Authorities").   The Taxing Authorities shall not receive any distribution for any portion of each claim for penalties.

The Holder of the Class 8 Claim is impaired and entitled to vote to accept or reject the Plan.

6.9    Class 9.   Class 9 consists of the Unsecured Claims Arising From Reimbursement of Tuition.  Holders of Allowed Class 9 Claims shall receive a distribution equivalent to five (5%) percent of the Allowed Claim payable in semi-annual installments over the next five (5) years.  The distributions shall occur on the fifteenth (15th) business day in the months of April and October.  A chart illustrating the potential Class 9 Claimants is set forth on Exhibit "I" attached hereto and incorporated herein by reference.

The Holder of the Class 9 Claim is impaired and entitled to vote to accept or reject the Plan.

6.10    Class 10.  Class 10 consists of Insider Claims. Holders of Allowed Insider Claims shall not receive any distributions.

6.11    Class 11.   Class 11 consists of Interest Claims. Mr. Spooner shall continue to serve as the officer and director of the reorganized debtor and shall forgive any and all debts due and owing to Mr. Spooner and or any entities that he owns including, without limitation, Georgia Tent & Awning.

The holders of Class 11 Claim is Impaired.

## VII.   Administrative Expenses

Treatment of administrative expense claims is set forth in Article 5 of the Plan and summarized below.

7.1    Summary.    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan.  All such Claims are instead treated separately in accordance with this Article V and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

7.2    Administrative Expense Claims.

7.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Debtor or the Reorganized Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business, or otherwise assumed by the Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

7.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Reorganized Debtor provide notice by mail or by publication, in a form and manner approved by the Court, of the occurrence of the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtor, the Estate, or the Reorganized Debtor.

7.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

The Debtor's attorney fees during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court.   The Plan provides that the Debtor may pay professional fees incurred after confirmation of the Plan without Court approval.   The Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

The following chart illustrates Debtor's estimated administrative expenses and proposed treatment under the Plan:

| Type | Estimated Amount Owed | Treatment |
|---|---|---|
| Ordinary Course of Business Expenses | Unknown at this time | Paid in accordance with credit terms of each vendor. Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order. |
| Professional Fees | Fees have not exceeded retainer as of the date of filing | Paid in accordance with credit terms of each vendor. Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order. |
| Other Administrative Expenses | None anticipated | Paid in accordance with credit terms of each vendor. Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order |
| U.S. Trustee Fees | Debtor believes payments are current | Paid in full on the Effective Date of the Plan |

## VIII.   Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods

of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

The receipt by a Creditor or Interest of cash or property in full or partial payment of its Claim or Interest may be a taxable event.  To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income.  A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the  receives amounts under the Plan.  Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

Under the backup withholding rules of the Tax Code, a  Holder of a Claim may be subject to backup withholding at the rate of thirty-one percent (31%) with respect to Distributions made pursuant to the Plan unless such Holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that it is not subject to backup withholding due to a failure to report all dividends and interest.  Any amount so withheld will be credited against the Holder's federal income tax liability.

## IX.    Debtor's Operations After the Filing Date

Debtor has continued to operate its business as Debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code since the Petition Date.

## X.    Liquidation Analysis

The Debtor's Plan provides funding for the Plan from ongoing business operations and pay Holders of Allowed Unsecured Trade Claims in full.

In the event the Debtor's estate is liquidated, the unsecured creditors would receive an amount less than that proposed in the Plan. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the liquidation of non-exempt assets. Assets disposed of by

"liquidation" or "fire" sale generally generate less proceeds than assets that are marketed and sold as a going concern.

Debtor's primarily of accounts receivable and buildings.  The buildings are located on the Real Property that is owned by Hidden Lake and subject to the security interest and lien asserted by BB&T.  The buildings cannot be sold separately and thus the value of any buildings are minimal as it could not be sold separately from the Real Property.  Additionally, the largest receivable due and owing to the Debtor is from Ridge Creek which operates on the Real Property.  In the event HLA and Hidden Lake are unable to effectuate and implement a plan of reorganization, the Real Property will be foreclosed upon and Ridge Creek's operations would cease.  Debtor does not believe liquidation generates any proceeds from Ridge Creek.  The remaining accounts receivable total $255,787.22, assuming a 100% collection rate which is highly unlikely, all proceeds would be disbursed first to the Georgia Department of Revenue and Georgia Department of Labor i satisfaction of their secured claims which collectively exceed $235,000.00 and then any remaining proceeds would be disbursed to satisfy the priority claims of the Taxing Authorities which collectively exceed $1,000,000.00.  No funds would be available to disburse to unsecured creditors.

## XI.  Procedures for Treating and Resolving Disputed Claims

### A.  Objection To Claims

The Plan provides that the Reorganized Debtor shall be entitled to object to Claims, provided, however, that the Debtor and Reorganized Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of the Plan.  Any objections to Claims must be filed by the Claims Objection Deadline.  The Plan defines the Claims Objection Deadline to be the later of the first Business Day which is (i) thirty (30) days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

### B.  No Distributions Pending Allowance

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

### C.  Estimation of Claims

The Debtor or the Reorganized Debtor, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to

any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (and after the Effective Date, the Reorganized Debtor) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D.    Resolution of Claims Objections

On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## XII.    Conditions Precedent to the Effective Date

### A.    Conditions to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Article 11.3 of the Plan:  (a) the Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan; and (b) the Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Court.

### B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of the Plan.

    (a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

    (b)    All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to the Debtor, in its reasonable discretion.

    (c)    The Debtor shall have received any authorization, consent, regulatory approval.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor in their sole discretion).  The failure of the Debtor to exercise any of the

foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## XIII.  Certain Effects of Confirmation

### A.  Vesting of the Debtor's Assets

Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtor that owned such property or interest in property as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the Effective Date, the Reorganized Debtor may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### B.  Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor, the Reorganized Debtor or its Estate that arose prior to the Effective Date.

### C.  Release by Debtor of Certain Parties

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, the Debtor, in their individual capacity and as a Debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the bankruptcy case, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring or the bankruptcy cases. The Reorganized Debtor, and other potential representatives of the Estate shall be bound, to the same extent the Debtor are bound, by all of the releases set forth above.

The Released Parties include, consultants, agents, financial advisors, attorneys and other representatives of the Debtor who served in such capacity on or subsequent to the Filing Date, in each case in their capacity as such.

### D.    Release by Holders of Claims and Interests

The Plan contains the following language regarding releases of claims by Holders of Claims and Interests:

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, (a) EACH PERSON THAT VOTES TO ACCEPT THE PLAN OR IS PRESUMED TO HAVE VOTED FOR THE PLAN PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE; AND (b) TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH ENTITY (OTHER THAN A DEBTOR), THAT HAS HELD, HOLDS, OR MAY HOLD A CLAIM OR INTEREST (EACH, A "RELEASE OBLIGOR"), IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTOR AND THE REORGANIZED DEBTOR UNDER THE PLAN AND THE CASH, NEW COMMON STOCK, AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THE PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY CLAIM OR CAUSE OF ACTION EXISTING AS OF THE EFFECTIVE DATE ARISING FROM, BASED ON OR RELATING TO, IN WHOLE OR IN PART, THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASE OBLIGOR, AND ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO SUCH SUBJECT MATTER, TRANSACTION OR OBLIGATION; PROVIDED, HOWEVER, THAT THIS ARTICLE 10.4 SHALL NOT RELEASE ANY RELEASED PARTY FROM ANY CAUSE OF ACTION HELD BY A GOVERNMENTAL ENTITY EXISTING AS OF THE EFFECTIVE DATE, BASED ON (i) THE INTERNAL REVENUE CODE OR OTHER DOMESTIC STATE, CITY OR MUNICIPAL TAX CODE, (ii) THE ENVIRONMENTAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iii) ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iv) THE EXCHANGE ACT, THE SECURITIES ACT, OR OTHER SECURITIES LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY, OR MUNICIPALITY, OR (v) SECTIONS 1104-1109 AND 1342(d) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED.**

### E.    Setoffs

The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against such entity, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or

the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such entity.

**F.    Exculpation and Limitation of Liability**

Under the Plan, the Debtor, the Reorganized Debtor and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.   No  Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

**G.    Injunction**

The satisfaction, release, and discharge pursuant to Article X of the Plan shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

**H.    Miscellaneous Plan Provisions**

**1.    Modification of Plan**

The Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, the Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely

affects the rights of parties in interest which have cast said votes.  The Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

### 2.    Retention of Jurisdiction

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c)    To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

(d)    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor and/or the Reorganized Debtor;

(e)    To hear and rule upon all applications for Professional Compensation;

(f)    To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g)    To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h)    To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)    To determine any suit or proceeding brought by the Debtor and/or the Reorganized Debtor to recover property under any provisions of the Bankruptcy Code;

(k)     To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under the Plan;

(l)     To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)     To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n)     To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor  sold any of its assets during the Bankruptcy Cases; and

(o)     To enter a final decree.

## XIV.   Confirmation and Consummation Procedure

### A.     General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan.  As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan.  Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by Holders of at least two-thirds of the dollar amount of the class and by more than one-half in number of Claims. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and returning the ballot form (the "Ballot") by the Voting Deadline.  Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement.  The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must return their Ballots.

### B.     Solicitation of Acceptances

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors and equity interest holders to make an informed decision whether to accept or reject the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to, or concurrently with, such solicitation.

### C.  Acceptances Necessary to Confirm the Plan

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by the Debtor's creditors.  The Voting Classes will be deemed to accept the Plan if at least two-third in amount and more than one-half in number of the Claims in each class vote to accept the Plan.  Furthermore, unless there is unanimous acceptance of the Plan by the Voting Classes, the Court must also determine that any non-accepting Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

### D.  Confirmation of Plan Pursuant to Section 1129(b)

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes.  To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan.  Class 5 is deemed to reject the Plan.  Accordingly, if any Impaired Class votes to accept the Plan, the Debtor will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

**Remainder of Page Left Intentionally Blank**

**E.**     **Considerations Relevant to Acceptance of the Plan**

The Debtor's recommendation that all Creditors should vote to accept the Plan is premised upon the Debtor's view that the Plan is preferable to other alternatives for liquidation of the Debtor's estate.  It appears unlikely to the Debtor that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

Respectfully submitted this 30th day of October, 2009.

**HLA, Inc.**

By:  */s/ Kenneth Spooner*
Its: President

Debtor and Debtor in Possession

**M. DENISE DOTSON, LLC**

 *s/ M. Denise Dotson*
M. Denise Dotson
Georgia Bar No. 227230
170 Mitchell Street, SW
Atlanta, GA 30303
(404) 526-8869 Phone
(404) 526-8855 Facsimile
ddotsonlaw@me.com

CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Spring Street
Atlanta, Georgia 30303

This 30th day of October, 2009.

**M. DENISE DOTSON, LLC**

*s/ M. Denise Dotson*
M. Denise Dotson
Georgia Bar No. 227230
170 Mitchell Street, SW
Atlanta, GA 30303
(404) 526-8869 Phone
(404) 526-8855 Facsimile
ddotsonlaw@me.com

# EXHIBIT "A"

# EXHIBIT "B"

# EXHIBIT "C"

# EXHIBIT "D"

# EXHIBIT "E"

# EXHIBIT "F"

# EXHIBIT "G"

# EXHIBIT "H"

# EXHIBIT "I"