# EXHIBIT "B"

# COMMERCIAL LEASE

THIS LEASE made this 1ˢᵗ day of January, 1998 by and between Hidden Lake Academy, Inc., a Georgia Corporation, (hereinafter referred to as "Landlord") and HLA, Inc., a Georgia Nonprofit Corporation (hereinafter referred to as "Tenant").

WITNESSETH:

## 1. PREMISES

Landlord does hereby demise, rent and lease to Tenant and Tenant from Landlord the following described property (hereinafter referred to as "Premises"): All land and buildings owned by Landlord and located in Dahlonega, Lumpkin County, Georgia. The land and its location is more particularly shown by the legal descriptions attached and incorporated herein as Exhibits "A" and "B".

## 2. TERM

To have and to hold the same for a term (the "Lease Term") beginning on the first (1ˢᵗ) day of January, 1998 (the "Commencement Date"), and ending at Midnight on the thirty-first (31ˢᵗ) day of December, 2007, unless sooner terminated or extended as hereinafter provided. The Tenant shall have the right to extend the term of the Lease on the same terms and conditions as provided for herein and through the day of the termination of the useful life of any building(s) constructed by Tenant pursuant to Paragraph 6 below. Such useful life shall be determined under applicable Internal Revenue Code and Regulation provisions.

## 3. RENTAL

Tenant shall pay to Landlord "Base Rent" of Twelve Thousand Eight Hundred and 00/100 dollars ($12,800.00) per month in advance on the first (1ˢᵗ) day of each month beginning January 1, 1998. In addition, Tenant shall pay to Landlord all hazard and liability insurance premiums and all ad valorem real and personal property taxes for the Premises. Said insurance premiums and ad valorem real and personal property taxes for the Premises shall be paid to Landlord by Tenant upon Landlord incurring and paying such premiums and taxes. Amounts incurred for insurance premiums and ad valorem taxes shall be prorated if said premium and tax bills reflect periods of time during which Tenant has not leased the Premises so that Tenant shall only be responsible for those portions of insurance premiums and ad valorem taxes representing amounts incurred for Tenant's lease term. In addition to Base Rent, hazard and liability insurance premiums, and ad valorem real and personal property taxes, Tenant shall also pay to Landlord during the term of this Lease "Percentage Rent" on the first (1ˢᵗ) of each month beginning February 1, 1998 and continuing on the first (1ˢᵗ) day of each and every month through the month after the termination of the Lease, according to the following schedule:

(a)    Three percent (3%) of the gross revenues for the $184,000.00 of gross revenue for the preceding month;

(b)    One percent (1%) of the gross revenues for the amount of gross revenues between $184,000.00 and $414,166.00 for the preceding month; and

(c)    One-half percent (1/2%) of the gross revenues for the amount of gross revenues in excess of $414,166.00 for the preceding month.

"Gross Revenues" of Tenant for purposes of this Lease Agreement shall include all amounts of revenue received by Tenant in its operations of the School on or from the Premises, including, but not limited to, all tuition, fees, or other revenue amounts received by Tenant, less any tuition refunds, but specifically not including any charitable contributions to any charitable funds maintained by Tenant under applicable Internal Revenue Code and Regulation provisions.

Together with the payment of Percentage Rent, Tenant shall deliver to Landlord a statement of all gross revenues received by Tenant during the preceding month. Landlord upon written notice to Tenant shall have the right to audit the books and records of Tenant at anytime and from time to time to determine the method and accuracy of Tenant's reporting of gross revenues. Should said reporting indicate that gross revenues have been under-reported by greater than one percent (1%), then Tenant shall pay the additional rent due to Landlord plus interest at the rate of one point five percent (1.5%) per month from the date the rent should have been paid had the gross revenues been reported accurately, plus reimburse Landlord for the entire expense of the audit.

## 4. USE

(a)    The Premises shall be used for school purposes only and no other, said school shall operate and have students present three hundred sixty-five (365) days per year each and every year during the term of this Lease. The Premises shall not be used for any illegal purposes; nor in violation of any regulation of any governmental body; nor in any manner to create any nuisance or trespass. Tenant shall at its own expense obtain any and all licenses and permits necessary for its use of the Premises. Tenant shall not receive, store or otherwise handle any product, material, or merchandise which is explosive or highly inflammable or which is considered a "Hazardous Substance" as hereinafter defined. "Hazardous Substance" means pollutants, contaminants, toxic or hazardous substances or wastes, oil or petroleum products, flammables or any other substances whose nature and/or quantity of existence, use, release, manufacturer effect renders it subject to clean up under any Federal, State or local environmental, health, community awareness or safety laws or regulations, now or hereafter enacted or promulgated by any governmental authority or court ruling, or any investigation, remediation or removal. In no event shall any activity carried out on the Premises emit smoke, noxious odor, dust, or excessive noise that would affect the neighboring buildings. Tenant will comply with the local fire department rules and regulations.

(b)    Landlord may inspect the Premises during business hours to determine whether or not Tenant is complying with the terms and provisions of this Lease or to show the Premises to prospective purchases or mortgagees of the Premises and during the last one (1) year of the term of this Lease, to prospective Tenants.

## 5. REPAIRS.

(a)    Landlord shall, at its expense, maintain the roofs, foundation, structural parts, outside walls, and the concrete floors of the leased buildings to the extent damage thereto is due to settling, structural faults or results otherwise from causes not arising and not due to the

acts or failures to act of Tenant, Tenant's assigns, Tenant's employees, students, customers, or invitees. The term "walls" as used herein shall not include glass or plate glass. Landlord gives Tenant exclusive control of the Premises and shall be under no obligation to inspect the Premises. Tenant shall immediately give Landlord written notice of any defective condition which Landlord is required to repair, after which Landlord shall have reasonable opportunity to repair same or cure such defect. Landlord shall have the right, but not the duty, to enter the Premises at any time in order to examine the Premises or of the building. Nothing contained in this Lease shall require Landlord to repair any damage caused by Tenant, and Tenant shall cause said repairs to be made at its expense.

(b)    Tenant accepts the Premises in their present condition as suited for the use intended by Tenant. Tenant shall keep and maintain the Premises in good order and good repair and first class cosmetic condition, including all grounds and structures, and shall promptly make all repairs except those foregoing, Tenant shall be responsible for all maintenance and repair of all decorating, grounds, equipment and fixtures used in connection with the Premises, including landscaping, heating, ventilation, air conditioning, plumbing, electric, gas, and telephone equipment and fixtures. Tenant shall on the end of the term hereof return the keys and deliver possession of the Premises by the installation, removal and/or use of said fixtures, equipment or machines. Tenant shall not remove fixtures, equipment or machines from Premises if it is in default under this Lease.

(c)    Tenant shall keep the grounds, parking areas, driveways and alleys and the whole of the Premises in a clean and sanitary condition free of any trash, scraps or any materials and products pertaining to its business. No area outside of the buildings shall be used by Tenant for storage without Landlord's prior written permission. Tenant shall care for the grounds surrounding the buildings, including the mowing of grass, care of shrubs, and general landscaping.

## 6. ALTERATION, ADDITIONS, IMPROVEMENTS

(a)    With the exception of the following, which shall be constructed at Tenant's sole expense, no buildings, alternation, additions or improvements in the Premises shall be made without the prior written consent of Lessor:

1)    Chapel
2)    Seven (7) employee houses
3)    Two (2) dormitories
4)    Renovation of dorm number 5

Any such building, alterations, additions or improvements must comply with all applicable zoning and building codes. Landlord may, but is not required, to approve additional buildings, alterations, additions or improvements.

Page 3

(b) At the termination of this lease, Tenant shall, if Landlord so elects, remove all buildings, alterations, additions or improvements erected by Tenant and restore the Premises to their original condition, unless Landlord previously approved such buildings, alterations, additions or improvements and waived the right in writing to such restoration. All such removals and restoration shall be accomplished in a good workmanlike manner. Tenant shall keep Premises free of any mechanic's lien or encumbrances due to Tenant's construction of buildings, alterations, additions, removal or improvements. If the Landlord does so elect, all buildings, alterations, additions or improvements made in or upon the Premises, either by the Tenant or the Landlord, shall be the Landlord's property, and shall remain upon the Premises at the termination of this Lease by lapse of time or otherwise, without compensation to the Tenant.

## 7. DESTRUCTION OR DAMAGE

(a) If either the Premises are totally destroyed or so substantially damaged as to be untenantable by fire, lightning, earthquake, windstorm, or other casualty, and cannot be repaired within a reasonable time, this lease may be terminated by either party upon thirty (30) days written notice to the other, and rent shall be accounted for between Landlord and Tenant as of the termination date.

(b) If the Premises, or any part thereof, are damaged but not rendered untenantable by any above mentioned casualty, Landlord shall repair the Premises within a reasonable time after receipt of written notice thereof; provided, that Landlord shall not be required to rebuild, repair or replace any part of the buildings, alterations, additions, improvements, equipment or machinery which may have been placed on the Premises by Tenant. Until such repairs shall be made, the rent shall be abated proportionately to the part of the Premises which is usable by Tenant. At the completion of such repairs, full rent shall recommence.

(c) Any insurance which may be carried by Landlord or Tenant against loss or damage to the building and/or the Premises shall be for the sole benefit of the party carrying such insurance.

(d) Tenant shall not make any use of the Premises which would make void or voidable any policy of fire or extended coverage insurance insuring the Premises, and if by reason of any use by Tenant of the Premises, the hazard premiums on policies maintained by Landlord shall be increased over normal rates for this type of building, the amount of the increase in the premium shall be paid by Tenant to Landlord from time to time on demand.

## 8. LIABILITY AND INDEMNIFICATION

(a) Tenant does hereby agree to indemnify and save Landlord harmless from and against any and all liability for any injury to or death of any person or persons or damage to property in any way arising out of or connected with the condition, use or occupancy of the Premises, or in any way arising out of the activities of Tenant, its agents, employees, licensees or invitees on the Premises and/or the building and from all costs, expenses and liabilities, including but not limited to reasonable attorneys fees, incurred by Landlord in connection therewith, excepting, however, liability caused by Landlord's negligence.

(b) Tenant covenants and agrees that Landlord shall not be liable to Tenant for any injury or death to any person or persons or for damage to any property of Tenant, or any person claiming through Tenant, arising out of any accident or occurrence in the Premises, including, without limiting the generality of the foregoing, injury, death or damage caused by the Premises or of any portions of the Premises being out of repair, or caused by any defect in or failure of equipment, pipes, or wiring, or caused by broken glass, or caused by the backing up of drains, or caused by gas, water, steam, electricity, or oil leaking, escaping or flowing into Premises, or caused by fire or smoke, or caused by the acts or omissions of other tenants located in or about the building other than any and all acts caused by Landlord's negligence, and landlord's agents, employees, licensees or invitees.

(c) At all times during the term of the lease, Tenant shall keep in effect with insurance companies, satisfactory to Landlord, legally authorized to transact business in Georgia and maintaining an office or agency in the State of Georgia, public liability insurance including personal injury in the name of and for the benefit of Landlord and Tenant, with limits for bodily injury or death of not less than $1,000,000 for each person; $1,000,000 for each occurrence; and for property damage not less than $100,000. All policies and certificates of insurance shall name Landlord as an additional insured and shall provide that all Landlord's losses, to the limit of the policy, will be indemnified and all liability claims against Landlord resulting from Tenant's business will be defended by Tenant or his insurance carrier at no cost to Landlord. Tenant shall promptly deliver to Landlord all such certificates of insurance, and they shall be held by Landlord. Tenant agrees that it shall not cancel any of the above mentioned policies, or allow any one to lapse without delivering to Landlord a certificate indicating equal or greater coverage written by an insurance company acceptable to Landlord. The loss limits of insurance required to be maintained by Tenant my be periodically increased by Landlord in Landlord's sole discretion and to reflect industry standards.

(d) Notwithstanding any other provision of this lease, each party hereto hereby waives any cause of action it may have against the other party hereto on account of any loss or damage which is covered by any insurance policy of which the damaged party is a beneficiary. Each party agrees that it will request its insurance carrier to endorse all applicable policies, waiving the carrier's right of recovery under subrogation or otherwise which said carrier would have in the absence of this Section.

(e) Landlord does hereby agree to indemnify and save Tenant harmless from and against any and all liability for any injury to or death of any person or persons or damage to property in any way arising out of the activities of Landlord, its agents, employees, licensees or invitees on the Premises and/or the buildings and from all costs, expenses and liabilities, including but not limited to reasonable attorneys fees, incurred by Tenant in connection therewith, excepting, however, liability caused by Tenant's negligence.

## 9. DEFAULTS AND REMEDIES

(a) If Tenant fails to keep or perform any covenant or provision of this lease (except payment of any installment of rent or other charge or money obligation herein required to be paid by Tenant) or violates any such covenant or provision, Landlord may, in addition to all other remedies at law or in equity or elsewhere provided for in this lease, without notice, enjoin Tenant from any such failure or violation.

(b) Any installment of rent or any other charge or money obligation herein required to be paid by Tenant which is not paid within ten (10) days of when due shall bear interest at the rate of two percent (2%) per annum above the prime interest rate then declared or the highest lawful rate, whichever is less, from the due date until paid, and any such charge of money obligation shall be additional rent hereunder.

(c) The occurrence of any of the following is deemed to be an event of default under this lease:

(1) The making by Tenant of an assignment for the benefit of its creditors;

(2) The levying of a writ of execution or attachment on or against the property of Tenant and the same not being released or discharged within thirty (30) days thereafter;

(3) The institution of proceedings for the reorganization, liquidation or involuntary dissolution of Tenant, or for its adjudication as a bankrupt or an insolvent, or for the appointment of a receiver of the property of Tenant, and said proceeding not being dismissed, and any receiver, trustee or liquidator appointed therein not discharged within thirty (30) days after the institution of such proceedings;

(4) The doing or permitting to be done of any act by Tenant which creates a claim or a lien therefor against the Premises and/or building and the same not being released or otherwise provided for by indemnification satisfactory to Landlord within thirty (30) days thereafter;

(5) Failure of Tenant to pay any installment of rent or other charge or money obligation herein required to be paid by Tenant within ten (10) days after written notice or within thirty (30) days after the due date (without any requirement of notice or demand), or to comply with any other covenant or provision of this lease within thirty (30) days after written notice of such failure is given by Landlord, of if it is not possible to cure such failure within such period promptly after receipt of such notice, to advise Landlord in writing of Tenant's intention duly to institute all steps necessary to cure such failure or violation and to begin performance of such covenant within such period and diligently to pursue performance to completion in a reasonable time thereafter; or

(6) The abandonment or desertion of all or substantially all of the Premises by Tenant.

(d) In the event of default, Landlord has the option of pursuing any one or more of the following remedies without any notice or demand whatsoever:

(1) Terminate this lease, in which event Tenant shall immediately surrender Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have, enter upon and take possession of Premises and expel or remove Tenant and any other person who may be occupying Premises or any part thereof, by force, if necessary, without being liable for prosecution or any claim of damages therefor;

(2) Enter upon and take possession of Premises and expel or remove Tenant and any other person who may be occupying Premises or any part thereof, without being liable for prosecution or any claim of damages therefore, and, if Landlord so elects, make such alterations and repairs as may be necessary to relet Premises, and relet or any part thereof at such rent and for such period of time and subject to such terms and conditions as Landlord may deem advisable and receive the rent therefor.  Upon each such reletting all rent received by the Landlord from such reletting shall be applied first to the payment of any expenses of such reletting, including brokerage fees and attorneys fees and costs of such alterations and repairs; and second to the payment of any indebtedness other than rent due hereunder from Tenant to Landlord; third to the payment of rent due and unpaid hereunder; and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder.  Tenant agrees to pay to Landlord on demand any deficiency that may arise by reason of such reletting.  Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this lease for such previous breach.

(3) Landlord may, in addition to any other remedies at law or in equity or elsewhere in this lease provided, cure or prosecute the curing of such failure or violation at reasonable expenses, which expenses shall be paid to Landlord by Tenant on demand. Tenant agrees that in the event of any failure or violation covered by this Article, all rights of Landlord may be exercised by persons acting on behalf of Landlord, under authority granted by Landlord, with full right of reimbursement as provided hereunder.  Tenant agrees that neither Landlord nor any such person acting on its behalf shall be liable for any damage resulting to the Tenant by the exercise of the rights granted under this Article.

(e) Should Landlord terminate this lease in accordance with the provisions of this Article, Landlord may in addition to any other remedies it may have, immediately recover from Tenant all damages Landlord may incur by reason of such breach, including the cost of recovering Premises and reasonable attorneys fees, and including the worth, at the time of such termination, of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this lease for the remainder of the lease term over the then reasonable rental value of Premises for the remainder of the lease term.

(f) Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the covenants and provisions herein contained.

(g) Tenant hereby appoints as its agent to receive service of all dispossessory or distress proceedings and notices thereunder the person in charge of Premises at the time, and if no person is then in charge of Premises, then such service or notice may be made by attaching the same to the entrance of Premises, provided that a copy of any such proceedings or notices shall be mailed to Tenant at the Premises.

## 10. CONDEMNATION

If during the term of this lease the Premises or any substantial part thereof be condemned or taken by any governmental authority or any corporation having the power of eminent domain, the court in such condemnation proceedings shall be requested to make separate awards to Landlord and Tenant, and Landlord and Tenant agree to request such action by such court; however, in the event that the court grants only one award then it shall be the sole and exclusive property of the Landlord, and Tenant shall make no claim against this award. If an award is made or payments are available for relocation expenses of Tenant, then this award shall be the sole and exclusive property of Tenant, and Landlord shall make no claim to such and shall immediately pay such to Tenant if received by Landlord. If the entire Premises are condemned, or if the portions of the Premises remaining after such condemnation proceedings shall not be suitable for Tenant's use, this lease shall terminate as of the date of taking. If the portion of the Premises remaining after such condemnation proceedings shall be suitable for Tenant's use, the rent payable by Tenant to Landlord after taking shall be reduced to the proportion of the rent stipulated hereunder which the square footage of the Premises remaining after the taking bears to the square footage of the Premises immediately prior to the taking.

## 11. SUBORDINATION

(a) This lease and all rights of Tenant hereunder are and shall be subject and subordinate to the lien of any mortgage, deed to secure debt, deed of trust or other instrument in the nature thereof which may now or hereafter effect Landlord's or his successors interest in the fee title to the Premises. Landlord agrees to use its best efforts to obtain an agreement from any future lenders to allow the attornment of Tenant to such Lender should such lender become the Landlord, so long as Tenant is not in default under the terms hereof. In confirmation of such subordination, Tenant shall, upon demand, at any time or times execute, acknowledge and deliver to Landlord, without expense to Landlord, any and all instruments that may be requested by Landlord to evidence the subordination of this lease and all rights hereunder to the lien of any such mortgage, deed to secure debt, deed of trust or other instrument in the nature thereof, and each renewal, modification, consolidation, replacement, or extension thereof, and, if Tenant shall fail at any time to execute, acknowledge, and deliver any such instrument, Landlord, in addition to any other remedies available to it in consequence thereof, may execute, acknowledge and deliver the same as the attorney in fact of Tenant and in Tenant's name, place and stead, and Tenant hereby irrevocably makes, constitutes and appoints Landlord, its successors and assigns, such attorney in fact for that purpose.

(b) Notwithstanding the foregoing of the preceding sub-paragraph, Landlord or his successor in interest may elect to make this lease superior to the lien of any mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof. Tenant shall, upon Landlord's request, at any time or times, execute, acknowledge and deliver to Landlord without expense to Landlord, any and all instruments that may be necessary to make this lease superior to the lien of any such mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof, and each such renewal, modification, consolidation, replacement or extension thereof, and, if Tenant shall fail at any time to execute, acknowledge

Page 8

and deliver such instrument in addition to any other remedies available in consequence thereof, Landlord may execute, acknowledge and deliver the same as the attorney in fact of Tenant and in Tenant's name, place and stead, and Tenant hereby irrevocably makes, constitutes and appoints Landlord, his successors and assigns, such attorney in fact for that purpose.

(c) If the holder of any mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof shall hereafter succeed to the rights of Landlord under this lease, whether through possession or foreclosure action or delivery of a new lease, at the option of such holder, Tenant shall attorn to and recognize such successor as Tenant's Landlord under this lease, and shall promptly execute and deliver any instrument that may be necessary to evidence such attornment, and Tenant hereby irrevocably appoints Landlord the attorney in fact of Tenant to execute and deliver such instrument on behalf of Tenant should Tenant refuse or fail to do so within ten (10) days after Landlord shall give notice to Tenant requesting the execution and delivery of such instrument, which notice shall be accompanied by a draft of such instrument.  Upon any such attornment, this lease shall continue in full force and effect as a direct lease between such successor Landlord and Tenant, subject to all of the terms, covenants and conditions of this lease.

(d) Tenant shall have no authority, express or implied, to create or place any lien or encumbrance, of any kind or nature whatsoever, upon, or in any manner to bind, the interest of Landlord in the Premises or to charge the rental payable hereunder or any claim in favor of any person dealing with Landlord. The Tenant covenants and agrees that it will pay or cause to be paid all sums legally due and payable by it on account of any labor performed or materials furnished in connection with any work performed on the Premises for which any lien is or can be validly and legally asserted, and that it will save and hold Landlord harmless from any and all loss, cost or expense based on or arising out of asserted claims or liens against the rights, title and interest of the Landlord in the Premises or under the terms of this lease.  Tenant further agrees to bond or pay every lien within thirty (30) days of the date said lien attaches to the Premises and/or Landlord's property.

## 12. SERVICES

Tenant agrees to pay all charges, fees and deposits incurred for any utility services used on the Premises.  Tenant shall pay all water, sewage, trash removal, gas, and electrical utility charges.  Landlord shall in no event be liable for any interruption or failure of utility services on the Premises, but if requested by Tenant, shall make reasonable effort to secure speedy resumption of said interrupted service.  Tenant shall promptly notify the proper public authorities and utility companies to provide for water, sewer, trash removal, gas and electricity service in Tenant's name and all costs for such services shall be borne by Tenant.

## 13. PERSONALTY OF TENANT

(a) If the Tenant shall not remove all goods, wares, equipment, fixtures, furniture, inventory, accounts, contract rights, chattel paper and other personal property situated on the Premises at the termination of this lease, Landlord may, at its option, remove all or part of said property in any manner that Landlord shall choose and store the same without liability for loss thereof, and Tenant shall be liable to Landlord for all expenses incurred in such removal and storage of said property.

(b) Upon the termination of this lease wherein Tenant shall be ...due in any amount to Landlord, in addition to the statutory lien for rent in Landlord's favor, Landlord shall have and Tenant hereby grants to Landlord a continuing security interest for all rentals and any other sums becoming due hereunder from Tenant upon all property described in the preceding subparagraph. Such property shall not be removed from the Premises without the consent of Landlord until all arrearage in rent, as well as any and all other sums of money then due to Landlord hereunder, shall first have been paid and discharged.

## 14. SUBLETTING AND ASSIGNMENTS

(a) Tenant may not, without the prior written consent of Landlord, directly or indirectly assign, transfer or hypothecate this Lease, nor any interest hereunder, nor sublet the Premises, nor any part thereof nor permit the use of the Premises by any party other than Tenant. Any merger of Tenant with another entity shall be considered an indirect assignment of this Lease. Notwithstanding any permitted assignment or subletting, Tenant shall at all times remain fully responsible and liable for the payment of the rent and other herein specified charges and for compliance with all of Tenant's other obligations under the terms, provisions and covenants of this lease. Any such assignment or subletting shall be limited to the existing term of the lease. Landlord shall have the right, in its discretion, to substitute any such assignee or subtenant for the Tenant and release Tenant from any further obligations under this lease, in which event Tenant shall have no further rights or obligations under the Lease.

(b) In the event that Landlord consents to an assignment or sublease of the Premises, the Tenant is not released from the Tenant's obligations under the Lease, and the assignee or subtenant pays a rent in excess of the rent owed by the Tenant under this Lease, then the Landlord shall be entitled to one-half (50%) of the excess.

(c) Upon the occurrence of any default by Tenant as herein defined, if the Premises or any part thereof are then assigned or sublet, Landlord, in addition to any other remedies herein provided or provided by law, may at its option collect directly from such assignee or subtenant all rents becoming due to Tenant under such assignment or sublease and apply such rent against any sum due to Landlord by Tenant hereunder, and such collection shall not be construed to constitute a novation nor a release of Tenant from the further performance of its obligations hereunder.

## 15. MISCELLANEOUS

(a) In the event Landlord is required by Landlord's lender or prospective lender to furnish financial statements on tenants of the Premises, upon Landlord's request, Tenant shall furnish to such lender its most current available financial statement, provided that Tenant shall not be required to furnish more than one such statement in any calendar year. Tenant is not required to furnish the financial statement to the Landlord, only to the Lender. Tenant may prohibit Lender from furnishing Landlord with a copy of the financial statement.

(b) The words "terminate" or "termination" as used herein shall refer to the end of this lease whether due to the expiration of the term hereof or the earlier ending of this lease in accordance with the terms and provisions hereof.

(c)  All rights, powers and privileges conferred herein upon the parties hereto shall be cumulative but not restrictive of those given by law.

(d)  The captions used in this lease are for convenience only and do not in any way limit or amplify the terms and provisions hereof.

(e)  One or more waiver of any covenant, term or condition of this lease by either party shall not be construed as a waiver of subsequent breach of the same covenant, term or condition.  The consent or approval by either party to or of any act by the other party requiring such consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

(f)  At any time and from time to time, Tenant, on or before the date specified in the request made by Landlord, which date shall not be earlier than five (5) days from the making of such request, shall execute, acknowledge and deliver at no cost to Landlord a certificate evidencing whether or not: (a) This lease in full force and effect; (b) This lease has been amended in any way and if so, how; (c) There are any existing defaults hereunder to the knowledge of Tenant and specifying the nature of such defaults, if any; and (d) The date to which rent, if any, has been paid.  Each certificate delivered pursuant to this paragraph may be relied on by any prospective purchaser or transferee of Landlord's interest hereunder and shall stop Tenant from denying the facts stated in said statement. Each such certificate provided for herein shall be prepared by Landlord or its agent and furnished to Tenant.

(g)  This lease contains the entire agreement of the parties and no representations or agreements, oral or otherwise, between the parties not embodied herein, shall be of any force or effect.

(h)  Time is of the essence of this agreement.

(i)  The rules and regulations attached to this instrument and any amendments and additions thereto as may be reasonably made by Landlord from time to time shall be and are hereby made a part of this lease.  Tenant, its employees and agents, will perform  and abide by said rules and regulations, and any amendments or additions to said rules and regulations.

(j)  This contract shall create the relationship of landlord and tenant between Landlord and Tenant; no estate shall pass out of Landlord; Tenant has only a usufruct, not subject to levy and sale.

(k)  If Tenant remains in possession after expiration of the term hereof, with Landlord's acquiescence and without any agreement of parties, Tenant shall be a tenant at will; and there shall be no renewal of this lease by operation of law.  During any such holding over, the monthly rate of Rent due and payable hereunder shall be increased to 150% of the monthly rate of Rent which was last applicable hereunder prior to the holding over.

(l)  The term "Landlord" as used in this lease means only the owner of the Premises so that in the event of any sale or sales or foreclosure thereof, Landlord, who is grantor in any such sale or foreclosure shall be and is hereby entirely relieved of all of the obligations of Landlord hereunder.  Any and all references to Landlord shall equally apply to his successors in interest.

(m) All notices required to be given to Landlord hereunder shall, until contrary instructions are given to Tenant in writing, be effectively given to Landlord if mailed, by registered or certified mail, return receipt requested, to the following address:

Leonard Buccellato , President
Hidden Lake Academy, Inc.
Suite 1146
3390 Peachtree Road, N.E.
Atlanta, Georgia 30326

All notices required to be given t Tenant hereunder shall, until contrary instructions are given t Landlord in writing, be effectively given to Tenant if mailed, by registered or certified mail, return receipt requested, to Tenant to the following address:

Kenneth Spooner, Chairman
HLA, Inc.
228 Margaret Street, N.E.
Atlanta, Georgia 30315-4105

(n) If any clause or provision of this lease is or becomes illegal, invalid or unenforceable because of present or future laws, rules or regulations of any governmental body, or becomes unenforceable for any reason, the intention of the parties hereto is that the remaining parts of this lease shall not be thereby affected.

(o) Landlord will provide Tenant with a designed location on the front of the premises above the front entrance for Tenant to place an identification sign. Such sign must conform with Landlord's rules and regulations concerning the size and design of signs, and shall be the only sign to be placed by Tenant on the front of the premises.

16. SUBORDINATION AND ATTORNMENT

(a) Tenant agrees that this Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying Lease which may now or hereafter be in effect regarding the Project or any, component thereof, to any mortgage now or hereafter encumbering the Demised Premises or the Project or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent hereof, whether said requirement is that of Landlord or any other party in interest, including, without limitation, any mortgagee.

Page 12

Landlord is hereby irrevocably vested with full power and authority as attorney-in-fact for Tenant and in Tenant's name, place and stead, to subordinate Tenant's interest under this Lease to the lien or security title of any mortgage and to any future instrument amending, modifying, renewing, consolidating, extending, restating, replacing or substituting any such mortgage.

(b) If any mortgagee or lessee under a ground or underlying lease elects to have this Lease superior to its mortgage or Lease and signifies its election in the instrument creating its lien or Lease or by separate recorded instrument, then this Lease shall be superior to such mortgage or Lease, as the case may be. The term "mortgage", as used in this Lease, includes any deed to secure debt, deed of trust or security deed and any other instrument creating a lien in connection with any other method of financing or refinancing. The term "mortgagee", as used in this Lease, refers to the holder(s) of the indebtedness secured by a mortgage.

(c) In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage covering the Demised Premises or the Project, or in the event the interests of Landlord under this Lease shall be transferred by reason of deed in lieu of foreclosure or other legal proceedings, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of the transferee or purchaser at foreclosure or under power of sale, or the lessor of the Landlord upon such Lease termination, as the case may be (sometimes hereinafter called "such person"), cancel this Lease and vacate the premises or attorn to such person and shall recognize and be bound and obligated hereunder to such person as the Landlord under this Lease; provided, however, that no such person shall be (i) bound by any payment of Rent for more than one (1) month in advance, except prepayments in the nature of security for the performance by Tenant of its obligations under this Lease (and then only if such prepayments have been deposited with and are under the control of such person); (ii) bound by any amendment or modification of this Lease made without the express written consent of the mortgagee or lessor of the Landlord, as the case may be; (iii) obligated to cure any defaults under this Lease of any prior landlord (including Landlord); (iv) liable for any act or omission of any prior landlord (including Landlord); (v) subject to any offsets or defenses which Tenant might have against any prior landlord (including Landlord); or (vi) bound by any warranty or representation of any prior landlord (including Landlord) relating to work performed by any prior landlord (including Landlord) under this Lease. Tenant agrees to execute any Attornment Agreement not in conflict herewith requested by Landlord, the mortgagee or such person. Tenant's obligation to attorn to such person shall survive the exercise of any such power of sale, foreclosure or other proceeding. Tenant agrees that the institution of any suit, action or other proceeding by any mortgagee to realize on Landlord's interest in the Demised Premises or the Building pursuant to the powers granted to a mortgagee under its mortgage, shall not, by operation of law or otherwise, result in the cancellation or termination of the obligations of Tenant hereunder. Landlord and Tenant agree that notwithstanding that this Lease is expressly subject and subordinate to any mortgages, any mortgagee, its successors and assigns, or other holder of a mortgage or of a note secured thereby, may sell the Demised Premises or the Building, in the manner provided in the mortgage and may, at the option of such mortgagee, its successors and assigns, or other holder of the mortgage or note secured thereby, make such sale of the Demised Premises or Building subject to this Lease.

## 17. SPECIAL STIPULATIONS

Insofar as the following special stipulations conflict with any of the foregoing provisions, the following shall control:

N/A

IN WITNESS WHEREOF, the parties herein have hereunto set their hands and seals, in triplicate, the day and year first above written.

"LANDLORD"                                    "TENANT"

Hidden Lake Academy, Inc.                     HLA, Inc.,
a Georgia Corporation                         a Georgia Nonprofit Corporation

By: _____                   By: _____
Leonard Buccellato, President                 Kenneth Spooner, Chairman
                        [Seal]                                        [Seal]

Page 14

## RULES AND REGULATIONS

1. Tenant shall not permit their employees, students, customers or visitors to regularly park during business hours on public streets near the premises, if any, and Tenant shall require that their customers, employees, students, and visitors shall obey the ordinances, resolutions, rules and regulations of the County.

2. Any outdoor storage facility or trash containers shall be effectively screened from all street frontage and shall be kept in a neat and clean condition. All trash shall be kept therein.

3. All outdoor signs or advertising material in or upon the exterior walls of the premises or buildings, interior or exterior windows or grounds of the building in which the premises are located shall be first approved by Landlord. There shall be no signs attached to the roofs.

4. Other than at employee residences, Tenant shall not permit its employees, visitors, customers, owners or principals to store any vehicles or other items to remain in the parking area and approach area for longer than one working day. Notwithstanding anything herein to the contrary, Tenant may maintain company vehicles in the parking area overnight, as long as the vehicles are in good operating condition.

## EXHIBIT 'A'

All that tract or parcel of land lying and being in Land Lots 943, 944, 945, 946, 1001, 1002, and 1016 of the 11th District, 1st Section of Lumpkin County, Georgia and containing 190.83 acres according to a plat for Hidden Lake Academy by Michael L. Scupin & Associates recorded in plat book 27, page 76, Lumpkin County, Georgia Records, said plat being incorporated herein by reference; and

# EXHIBIT "B"

All that tract or parcel of land lying and being in Land Lot 944. 11th District. 1st Section.
Lumpkin County, Georgia, embracing 5.259 acres. and being more particularly described as
follows:

To find the true point of beginning, commence at the northwest corner of Land Lot 944,
aforesaid District and Section; running thence South 83-17-39 East 606.67 feet to a U.S.F.S.
Marker found; thence South 84-10-53 East 330.33 feet to an IPS and the True Point Of
Beginning; thence South 84-10-53 East 184.03 feet to a square pipe found (said pipe also being
North 84-09-25 West 334.97 feet from a U.S.F.S. Marker found); thence South 21-30-07 West
121.26 feet to a rebar found; thence South 09-21-00 West 165.57 feet to a rebar found; thence
South 24-55-17 West 130.51 feet to a rebar found; thence South 28-34-19 West 80.69 feet;
thence South 11-12-05 East 34.82 feet; thence South 03-41-59 East 41.27 feet; South 43-54-51
West 62.23 feet; thence South 62-33-35 West 51.50 feet; thence South 73-46-11 West 56.12 feet;
thence South 46-46-27 West 59.14 feet; thence South 58-02-27 West 75.33 feet; thence South
29-47-26 West 103.19 feet; thence South 37-58-55 West 46.05 feet; thence South 53-18-48 West
62.53 feet; thence South 46-05-45 West 57.62 feet; thence South 27-59-46 West 70.83 feet to a
point on the northwest right-of-way of Hidden Lake Road (a 40-foot right-of-way); thence along
said right-of-way, South 72-29-49 West 137.05 feet to an IPS; thence North 21-15-28 East
277.19 feet to an IPS; thence North 34-32-59 East 477.87 feet to an IPS; thence North 21-41-56
East 352.96 feet to an IPS; thence North 40-46-44 East 99.04 feet to the True Point Of
Beginning, as shown on plat of survey for Nancy M. Mahone, by Michael Stewart Kelley, Ga.
R.L.S. No. 2313, dated August 16, 1995, which plat is incorporated herein by reference and
made a part hereof.

Subject To and Together with all easements. agreements, restrictions, and rights-of-way of record
in Lumpkin County, Georgia. and further subject to the following restrictions, which shall be
construed as covenants running with the land:

1.    Subdivision of the above-tract shall be permitted; however, in no instance shall said tract
      be subdivided into greater than three (3) separate parcels by Purchaser.
2.    No chickens. pigs or cows.
3.    Minimum square footage shall be 1000 square feet.
4.    No mobile homes or double-wide mobile homes. except modular homes with shingled
      roof and underpinning.

- 1 -

# EXTENSION OF COMMERCIAL LEASE

THIS EXTENSION OF COMMERCIAL LEASE (this "Extension"), entered into as of December 31, 2007, by and between **Hidden Lake Academy, Inc.**, a Georgia corporation ("Landlord"); and **HLA, Inc.**, a Georgia nonprofit corporation ("Tenant"). Landlord and Tenant are referred to collectively herein as the "Parties."

## WITNESSETH:

**WHEREAS**, Tenant and Landlord are parties to that certain Commercial Lease dated January 1, 1998 (the "Lease") covering certain premises generally described as: "[a]ll land and buildings owned by Landlord and located in Dahlonega, Lumpkin County, Georgia" (the "Premises"), a copy of which is attached hereto as **Exhibit "1"** and incorporated herein by reference; and

**WHEREAS**, the Lease was reviewed by Douglas B. Eidson, of The Eidson Group, LLC Commercial Real Estate Services, who determined on February 28, 2002 that the Lease represents a fair and equitable relationship between all parties, a copy of which is attached hereto as **Exhibit "2"** and incorporated herein by reference; and

**WHEREAS**, pursuant to the Lease, the Lease Term shall end at midnight on December 31, 2007 unless extended; and

**WHEREAS**, pursuant to the Lease, Tenant shall have the right to extend the term of the Lease on the same terms and conditions through the day of the termination of the useful life of any building(s) constructed by Tenant pursuant to Paragraph 6 of the Lease and such useful life shall be determined under applicable Internal Revenue Code and Regulations; and

**WHEREAS**, pursuant to Paragraph 6 of the Lease, Tenant has constructed buildings on the Premises as follows (all of which have been approved by Landlord): Boys' Dorm completed in 1998, Boys' Dorm completed in 1999, three (3) Duplexes completed in 2000, Girls' Dorm completed in 2001, Boys' Dorm (Ridge Creek) completed in 2001, Office Building (Ridge Creek) completed in 2002, Meeting/Classroom Bldg. (Ridge Creek) completed in 2001, Restroom Building completed in 2003, Girls' Dorm (Ridge Creek) completed in 2003, Maintenance Building completed in 2005, and Administration Building completed in September, 2006; and

**WHEREAS**, pursuant to the applicable Internal Revenue Code and Regulations effective as of December 31, 2007 the useful life of such commercial buildings is determined to be thirty-nine (39) years; and

**WHEREAS**, Tenant desires to exercise such right to extend the term of the Lease and Landlord agrees to extend the term pursuant to the terms and conditions as provided herein.

**NOW, THEREFORE**, for and in consideration of Ten Dollars ($10.00), the premises and mutual promises and covenants of the Parties hereto, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Unless otherwise defined in this Extension, all capitalized words have the same meaning as defined in the Lease.

2.    Term.    The Parties hereby agree that the Lease Term shall be extended to, and shall end at, midnight on September 30, 2045 such date being 39 years following the completion of the building most recently constructed on the Premises by Tenant as of the date of this Extension.

3.    Default of Lease.    The Parties acknowledge and agree that during the initial ten (10) years of the Lease Term, Tenant failed to pay at least one installment of rent within thirty (30) days of its due date which is an event of default pursuant to the Lease. Moreover, the Parties acknowledge and agree that, Tenant owes Landlord, pursuant to the Lease, a total of One Million Five Hundred Thirty-Six Thousand and No/100 Dollars ($1,536,000.00) of Base Rent through December 2007, One Million Eighty-Five Thousand Nine Hundred Twenty-Eight and No/100 Dollars ($1,085,928.00) of Percentage Rent through June 2007, and interest at the rate of two percent (2%) per annum above the prime interest rate then declared or the highest lawful rate, whichever is less, from each due date until paid. By agreeing to this Extension, Tenant acknowledges and agrees that Landlord does not waive any right to collect any unpaid amounts that are due and payable pursuant to the Lease.

4.    Landlord's Remedies.    The Parties further acknowledge and agree that, pursuant to the Lease, following an event of default (such as the one as described in Section 3 herein) Landlord has the option to, among other things, terminate the Lease and take possession of the Premises. Landlord hereby acknowledges that, as of the date of this Extension, it has not availed itself of any of the remedies available to it pursuant to the Lease following an event of default; however Landlord does not waive any such rights or remedies and hereby specifically reserves the right to pursue, at any time during the Lease Term (as such has been extended herein), any or all of the remedies provided to it pursuant to the Lease.

5.    The Parties hereby acknowledge and agree that this Extension shall not constitute a novation of the Lease. All provisions, terms and conditions of the Lease shall continue in full force and effect and shall be binding upon the Parties and their successors and assigns.

6.    This Extension may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Extension and all of which, when taken together, will be deemed to constitute one and the same agreement.

    IN WITNESS WHEREOF the Parties, intending to be legally bound, have caused this Extension to be duly executed by setting their hands hereto effective as of the date mentioned first above.

LANDLORD:                    TENANT:

HIDDEN LAKE ACADEMY, INC.:            HLA, INC.

By: _____        By: _____
    Leonard A. Buccellato, President        Kenneth Spooner, President

        (CORPORATE SEAL)                    (CORPORATE SEAL)

S:\01Clients\HLA, Inc\EXTENSION OF COMMERCIAL LEASE.doc

## MODIFICATION OF THE LEASE BETWEEN
## HIDDEN LAKE ACADEMY, INC. AND HLA, INC.

This document made this 22nd day of January, 2001 by and between Hidden Lake Academy, Inc., a Georgia Corporation (hereinafter referred to as "Landlord") and HLA, Inc., a Georgia Nonprofit Corporation (hereinafter referred to as "Tenant"). This document modifies the Commercial Lease (hereinafter "Original Lease") entered into between the parties on January 1, 1998.

### WITNESSETH:

### 1. SUBLETTING AND ASSIGNMENTS

The Landlord consents to the Tenant's subleasing of the Premises to Ridge Creek, Inc. A copy of said Sublease is attached hereto and incorporated as Exhibit "A". Landlord waives the provisions of Paragraph 14(b) of the Original Lease to the extent that Landlord would be entitled to shave any excess rent received by Tenant herein.

### 2. LEASE SHALL CONTROL IN ALL DISPUTES WITH SUBLEASE

Except for the provisions noted in Section 1 above, this Modification in no way alters any other provisions in the Original Lease.

IN WITNESS WHEREOF, the Parties hereto have hereunto set their hands and seals the day and year first above written.

TENANT: HLA, INC.

By: Kenneth Spooner , President

[SEAL]

LANDLORD: HIDDEN LAKE ACADEMY, INC.

By: Leonard A. Buccellato, President

[SEAL]

## EXHIBIT "A"

## COMMERCIAL REAL ESTATE SUBLEASE

THIS LEASE made this 1ˢᵗ day of January, 2001 by and between HLA, Inc., a Georgia Nonprofit Corporation (hereinafter referred to as "Sublessor" or "Landlord") and Ridge Creek, Inc, a Georgia Corporation, (hereinafter referred to as "Sublessee" or "Tenant").

### WITNESSETH:

### 1. PREMISES

Landlord does hereby demise, rent and lease to Tenant and Tenant from Landlord the following described property (hereinafter referred to as "Premises"):

The Northeast portion of the property described in Exhibit "A" attached and incorporated herein, being all that tract or parcel of land lying and being in the northeast portion of Land Lot 946.

### 2. TERM

To have and to hold the same for a term (the "Lease Term") beginning on the first (1ˢᵗ) day of January, 2001 (the "Commencement Date"), and ending at Midnight on the thirty-first (31ˢᵗ) day of December, 2007, unless sooner terminated or extended.

### 3. BASE RENTAL

Tenant shall pay to Landlord "Base Rent" of Ten Thousand and 00/100 Dollars ($10,000.00) per month in advance on the first (1ˢᵗ) day of each month beginning January 1, 2001 and ending December 31, 2007. In addition, Tenant shall pay pursuant to Paragraph 8 to Landlord all hazard and liability insurance premiums and all ad valorem real and personal property taxes for the Premises. Said insurance premiums and ad valorem real and personal property taxes for the Premises shall be paid to Landlord by Tenant upon Landlord incurring and paying such premiums and taxes. Amounts incurred for insurance premiums and ad valorem taxes shall be prorated if said premium and tax bills reflect periods of time during which Tenant has not leased the Premises so that Tenant shall only be responsible for those portions of insurance premiums and ad valorem taxes representing amounts incurred for Tenant's lease term. If ad valorem taxes are assessed on parcels larger than the area which Tenant is leasing, said taxes will be prorated according to the size of the area in which Tenant is leasing in proportion to the area upon which ad valorem taxes are based. In addition to Base Rent, hazard and liability insurance premiums, and ad valorem real and personal property taxes, Tenant shall also pay to Landlord during the term of this Lease "Percentage Rent" on the first (1ˢᵗ) day of each month beginning January 1, 2001 and continuing on the first (1ˢᵗ) day of each and every month through the month after the termination of the Lease, according to the following schedule:

(a)  Fifty percent (50%) of the gross revenues for the first $70,000.00 of gross revenue for the preceding month;

(b)  Seventy-five percent (75%) of the gross revenues for the amount of gross revenues between $70,000.00 and $200,000.00 for the preceding month; and

(c)  Eighty percent (80%) of the gross revenues for the amount of gross revenues in excess of $200,000.00 for the preceding month.

"Gross Revenues" of Tenant for purposes of this Lease Agreement shall include all amounts of revenue received by Tenant in its operations of the Leadership Program on or from the Premises, including, but not limited to, all tuition, fees, or other revenue amounts received by Tenant, less any tuition refunds.

Together with the payment of Percentage Rent, Tenant shall deliver to Landlord a statement of all gross revenues received by Tenant during the preceding month. Landlord upon written notice to Tenant shall have the right to audit the books and records of Tenant at any time and from time to time to determine the method and accuracy of Tenant's reporting of gross revenues. Should said reporting indicate that gross revenues have been under-reported by greater than one percent (1%), then Tenant shall pay the additional rent due to Landlord plus interest at the rate of one point five percent (1.5%) per month from the date the rent should have been paid had the gross revenues been reported accurately, plus reimburse Landlord for the entire expense of the audit.

## 4. USE

(a)    The Premises shall be used for the purposes of a leadership program only and no other, said leadership program operating and having attendees present three hundred sixty-five (365) days per year each and every year during the term of this Lease. The Premises shall not be used for any illegal purposes; nor in violation of any regulation of any governmental body; nor in any manner to create any nuisance or trespass. Tenant shall at its own expense obtain any and all licenses and permits necessary for its use of the Premises. Tenant shall not receive, store or otherwise handle any product, material, or merchandise which is explosive or highly inflammable or which is considered a "Hazardous Substance" as hereinafter defined.

Hazardous Substance means pollutants, contaminants, toxic or hazardous substances or wastes, oil or petroleum products, flammables or any other substances whose nature and/or quantity of existence, use, release, manufacturer effect renders it subject to clean up under any Federal, State or local environmental, health, community awareness or safety laws or regulations, now or hereafter enacted or promulgated by any governmental authority or court ruling, or any investigation, remediation or removal.

In no event shall any activity carried out on the Premises emit smoke, noxious odor, dust, or excessive noise that would affect the neighboring buildings. Tenant will comply with the local fire department rules and regulations.

(b)    Landlord may inspect the Premises during business hours to determine whether or not Tenant is complying with the terms and provisions of this Lease or to show the Premises to prospective purchases or mortgagees of the Premises and during the last one (1) year of the term of this Lease, to prospective Tenants.

## 5. REPAIRS

(a)      Landlord shall, at its expense, maintain the roofs, foundation, structural parts, outside walls, and the concrete floors of the leased buildings to the extent damage thereto is due to settling, structural faults or results otherwise from causes not arising and not due to the acts or failures to act of Tenant, Tenant's assigns, Tenant's employees, students, customers, or invitees. The term "walls" as used herein shall not include glass or plate glass. Landlord gives Tenant exclusive control of the Premises and shall be under no obligation to inspect the Premises. Tenant shall immediately give Landlord written notice of any defective condition which Landlord is required to repair, after which Landlord shall have reasonable opportunity to repair same or cure such defect. Landlord shall have the right, but not the duty, to enter the Premises at any time in order to examine the Premises or of the building. Nothing contained in this Lease shall require Landlord to repair any damage caused by Tenant, and Tenant shall cause said repairs to be made at its expense.

(b)      Tenant accepts the Premises in their present condition as suited for the use intended by Tenant. Tenant shall keep and maintain the Premises in good order and good repair and first class cosmetic condition, including all grounds and structures, and shall promptly make all repairs except those previously mentioned. Tenant shall be responsible for all maintenance and repair of all decorating, grounds, equipment and fixtures used in connection with the Premises, including landscaping, heating, ventilation, air conditioning, plumbing, electric, gas, and telephone equipment and fixtures. Tenant shall on the end of the term hereof return the keys and deliver possession of the Premises by the installation, removal and/or use of said fixtures, equipment or machines. Tenant shall not remove fixtures, equipment or machines from Premises if it is in default under this Lease.

(c)      Tenant shall keep the grounds, parking areas, driveways and alleys and the whole of the Premises in a clean and sanitary condition free of any trash, scraps or any materials and products pertaining to its business. No area outside of the buildings shall be used by Tenant for storage without Landlord's prior written permission. Tenant shall care for the grounds surrounding the buildings, including the mowing of grass, care of shrubs, and general landscaping.

## 6. ALTERATIONS, ADDITIONS, IMPROVEMENTS AND PERSONAL PROPERTY

(a)      With the exception of the following, which shall be constructed and supplied at Landlord's sole expense, no buildings, alteration, additions or improvements in the Premises or furniture, fixtures or equipment for the premises shall be made or brought on the Premises without the prior written consent of Lessor:

1.      Administrative Building;
2.      Dormitory Building;
3.      General Purpose Building; and
4.      Furniture, Fixtures, and Equipment for the above-referenced buildings and for up to 48 students and 18 staff.

Any such building, alterations, additions or improvements must comply with all applicable zoning and building codes. Landlord may, but is not required, to approve additional buildings, alterations, additions or improvements.

(b)    At the termination of this Lease, Tenant shall, if Landlord so elects, restore the Premises to their original condition.

(c)    Tenant's obligations to observe and perform any of the provisions of this Section 6 shall survive the expiration of Lease Term hereof or earlier termination of this Lease.

## 7. DESTRUCTION OR DAMAGE

(a)    If either the Premises are totally destroyed or so substantially damaged as to be untenantable by fire, lightning, earthquake, windstorm, or other casualty, and cannot be repaired within a reasonable time, this Lease may be terminated by either party upon thirty (30) days written notice to the other, and rent shall be accounted for between Landlord and Tenant as of the termination date.

(b)    If the Premises, or any part thereof, are damaged but not rendered untenantable by any above mentioned casualty, Landlord shall repair the Premises within a reasonable time after receipt of written notice thereof; provided, that Landlord shall not be required to rebuild, repair or replace any part of the buildings, alterations, additions, improvements, equipment or machinery which may have been placed on the Premises by Tenant. Until such repairs shall be made, the rent shall be abated proportionately to the part of the Premises which is usable by Tenant. At the completion of such repairs, full rent shall recommence.

(c)    Any insurance which may be carried by Landlord or Tenant against loss or damage to the building and/or the Premises shall be for the sole benefit of the party carrying such insurance.

(d)    Tenant shall not make any use of the Premises which would make void or voidable any policy of fire or extended coverage insurance insuring the Premises, and if by reason of any use by Tenant of the Premises, the hazard premiums on policies maintained by Landlord shall be increased over normal rates for this type of building, the amount of the increase in the premium shall be paid by Tenant to Landlord from time to time on demand.

## 8. LIABILITY AND INDEMNIFICATION

(a)    Tenant does hereby agree to indemnify and save Landlord harmless from and against any and all liability for any injury to or death of any person or persons or damage to property in any way arising out of or connected with the condition, use or occupancy of the Premises, or in any way arising out of the activities of Tenant, its agents, employees, licensees or invitees on the Premises and/or the building and from all costs, expenses and liabilities, including but not limited to reasonable attorney's fees, incurred by Landlord in connection therewith, excepting, however, liability caused by Landlord's negligence.

(b)    Tenant covenants and agrees that Landlord shall not be liable to Tenant for any injury or death to any person or persons or for damage to any property of Tenant, or any person claiming through Tenant, arising out of any accident or occurrence in the Premises, including, without limiting the generality of the foregoing, injury, death or damage caused by the Premises or of any portions of the Premises being out of repair, or caused by any defect in or failure of equipment, pipes, or wiring, or caused by broken glass, or caused by the backing up of drains, or caused by gas, water, steam, electricity, or oil leaking, escaping or flowing into Premises, or caused by fire or

Page 4 of 15

smoke, or caused by the acts or omissions of other tenants located in or about the building other than any and all acts caused by Landlord's negligence, and Landlord's agents, employees, licensees or invitees.

(c)     At all times during the term of this Lease, Tenant shall keep in effect with insurance companies, satisfactory to Landlord, legally authorized to transact business in Georgia and maintaining an office or agency in the State of Georgia, public liability insurance including personal injury in the name of and for the benefit of Landlord and Tenant, with limits for bodily injury or death of not less than $1,000,000 for each person; $1,000,000 for each occurrence; and for property damage not less than $100,000. All policies and certificates of insurance shall name Landlord as an additional insured and shall provide that all Landlord's losses, to the limit of the policy, will be indemnified and all liability claims against Landlord resulting from Tenant's business will be defended by Tenant or his insurance carrier at no cost to Landlord. Tenant shall promptly deliver to Landlord all such certificates of insurance, and they shall be held by Landlord. Tenant agrees that it shall not cancel any of the above mentioned policies, or allow any one to lapse without delivering to Landlord a certificate indicating equal or greater coverage written by an insurance company acceptable to Landlord. The loss limits of insurance required to be maintained by Tenant may be periodically increased by Landlord in Landlord's sole discretion and to reflect industry standards.

(d)     Notwithstanding any other provision of this Lease, each party hereto hereby waives any cause of action it may have against the other party hereto on account of any loss or damage which is covered by any insurance policy of which the damaged party is a beneficiary. Each party agrees that it will request its insurance carrier to endorse all applicable policies, waiving the carrier's right of recovery under subrogation or otherwise which said carrier would have in the absence of this Section.

(e)     Landlord does hereby agree to indemnify and save Tenant harmless from and against any and all liability for any injury to or death of any person or persons or damage to property in any way arising out of the activities of Landlord, its agents, employees, licensees or invitees on the Premises and/or the buildings and from all costs, expenses and liabilities, including but not limited to reasonable attorney's fees, incurred by Tenant in connection therewith, excepting, however, liability caused by Tenant's negligence.

## 9. DEFAULTS AND REMEDIES

(a)     If Tenant fails to keep or perform any covenant or provision of this Lease (except payment of any installment of rent or other charge or money obligation herein required to be paid by Tenant) or violates any such covenant or provision, Landlord may, in addition to all other remedies at law or in equity or elsewhere provided for in this Lease, without notice, enjoin Tenant from any such failure or violation.

(b)     Any installment of rent or any other charge or money obligation herein required to be paid by Tenant which is not paid within ten (10) days of when due shall bear interest at the rate of two percent (2%) per annum above the prime interest rate then declared or the highest lawful rate, whichever is less, from the due date until paid, and any such charge of money obligation shall be additional rent hereunder.

(c)    The occurrence of any of the following is deemed to be an event of default under this Lease:

1.    The making by Tenant of an assignment for the benefit of its creditors;

2.    The levying of a writ of execution or attachment on or against the property of Tenant and the same not being released or discharged within thirty (30) days thereafter;

3.    The institution of proceedings for the reorganization, liquidation or involuntary dissolution of Tenant, or for its adjudication as a bankrupt or an insolvent, or for the appointment of a receiver of the property of Tenant, and said proceeding not being dismissed, and any receiver, trustee or liquidator appointed therein not discharged within thirty (30) days after the institution of such proceedings;

4.    The doing or permitting to be done of any act by Tenant which creates a claim or a lien therefor against the Premises and/or building and the same not being released or otherwise provided for by indemnification satisfactory to Landlord within thirty (30) days thereafter;

5.    Failure of Tenant to pay any installment of rent or other charge or money obligation herein required to be paid by Tenant within ten (10) days after written notice or within thirty (30) days after the due date (without any requirement of notice or demand), or to comply with any other covenant or provision of this Lease within thirty (30) days after written notice of such failure is given by Landlord, of if it is not possible to cure such failure within such period promptly after receipt of such notice, to advise Landlord in writing of Tenant's intention duly to institute all steps necessary to cure such failure or violation and to begin performance of such covenant within such period and diligently to pursue performance to completion in a reasonable time thereafter; or

6.    The abandonment or desertion of all or substantially all of the Premises by Tenant.

(d)    In the event of default, Landlord has the option of pursuing any one or more of the following remedies without any notice or demand whatsoever:

1.    Terminate this Lease in which event Tenant shall immediately surrender Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have, enter upon and take possession of Premises and expel or remove Tenant and any other person who may be occupying Premises or any party thereof, by force, if necessary, without being liable for prosecution or any claim of damages therefor;

2.    Enter upon and take possession of Premises and expel or remove Tenant and any other person who may be occupying Premises or any part thereof, without being liable for prosecution or any claim of damages therefore, and, if Landlord so elects, make such alterations and repairs as may be necessary to relet Premises, and relet or any part thereof at such rent and for such period of time and subject to such terms and conditions as Landlord may deem advisable and receive the rent therefor. Upon

Page 6 of 15

each such reletting all rent received by the Landlord from such reletting shall be applied first to the payment of any expenses of such reletting, including brokerage fees and attorney's fees and costs of such alterations and repairs; and second to the payment of any indebtedness other than rent due hereunder from Tenants to Landlord; third to the payment of rent due and unpaid hereunder; and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder. Tenant agrees to pay to Landlord on demand any deficiency that may arise by reason of such reletting. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous breach.

3.    Landlord may, in addition to any other remedies at law or in equity or elsewhere in this Lease provided, cure or prosecute the curing of such failure or violation at reasonable expenses, which expenses shall be paid to Landlord by Tenant on demand. Tenant agrees that in the event of any failure or violation covered by this Article, all rights of Landlord may be exercised by persons acting on behalf of Landlord, under authority granted by Landlord, with full right of reimbursement as provided hereunder. Tenant agrees that neither Landlord nor any such person acting on its behalf shall be liable for any damage resulting to the Tenant by the exercise of the rights granted under this Article.

(e)    Should Landlord terminate this Lease in accordance with the provisions of this Article, Landlord may in addition to any other remedies it may have, immediately recover from Tenant all damages Landlord may incur by reason of such breach, including the cost of recovering Premises and reasonable attorney's fees, and including the worth, at the time of such termination, of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this Lease for the remainder of the Lease term over the then reasonable rental value of Premises for the remainder of the Lease term.

(f)    Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or for any damages accruing to Landlord by reason of the violation of any of the covenants and provisions herein contained.

(g)    Tenant hereby appoints as its agent to receive service of all dispossessory or distress proceedings and notices thereunder the person in charge of Premises at the time, and if no person is then in charge of Premises, then such service or notice may be made by attaching the same to the entrance of Premises, provided that a copy of any such proceedings or notices shall be mailed to Tenant at the Premises.

## 10. CONDEMNATION

If during the term of this Lease, the Premises or any substantial part thereof be condemned or taken by any governmental authority or any corporation having the power of eminent domain, the court in such condemnation proceedings shall be requested to make separate awards to Landlord and Tenant, and Landlord and Tenant agree to request such action by such court; however, in the event that the court grants only one award then it shall be the sole and exclusive property of the

Landlord, and Tenant shall make no claim against this award. If an award is made or payments are available for relocation expenses of Tenant, then this award shall be the sole and exclusive property of Tenant, and Landlord shall make no claim to such and shall immediately pay such to Tenant if received by Landlord. If the entire Premises are condemned, or if the portions of the Premises remaining after such condemnation proceedings shall not be suitable for Tenant's use, this Lease shall terminate as of the date of taking. If the portion of the Premises remaining after such condemnation proceedings shall be suitable for Tenant's use, the rent payable by Tenant to Landlord after taking shall be reduced to the proportion of the rent stipulated hereunder which the square footage of the Premises remaining after the taking bears to the square footage of the Premises immediately prior to the taking.

## 11. SUBORDINATION

(a)    This Lease and all rights of Tenant hereunder are and shall be subject and subordinate to the lien of any mortgage, deed to secure debt, deed of trust or other instrument in the nature thereof which may now or hereafter effect Landlord's or his successors interest in the fee title to the Premises. Landlord agrees to use its best efforts to obtain an agreement from any future lenders to allow the attornment of Tenant to such Lender should such lender become the Landlord, so long as Tenant is not in default under the terms hereof. In confirmation of such subordination, Tenant shall, upon demand, at any time or times execute, acknowledge and deliver to Landlord, without expense to Landlord, any and all instruments that may be requested by Landlord to evidence the subordination of this Lease and all rights hereunder to the lien of any such mortgage, deed to secure debt, deed of trust or other instrument in the nature thereof, and each renewal, modification, consolidation, replacement, or extension thereof, and, if Tenant shall fail at any time to execute, acknowledge, and deliver any such instrument, Landlord, in addition to any other remedies available to it in consequence thereof, may execute, acknowledge and deliver the same as the attorney in fact of Tenant and in Tenant's name, place and stead, and tenant hereby irrevocably makes, constitutes and appoints Landlord, its successors and assigns, such attorney in fact for that purpose.

(b)    Notwithstanding the preceding sub-paragraph, Landlord or his successor in interest may elect to make this Lease superior to the lien of any mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof. Tenant shall, upon Landlord's request, at any time or times, execute, acknowledge and deliver to Landlord without expense to Landlord, any and all instruments that may be necessary to make this Lease superior to the lien of any such mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof, and each such renewal, modification, consolidation, replacement or extension thereof, and, if Tenant shall fail at any time to execute, acknowledge and deliver such instrument in addition to any other remedies available in consequence thereof, Landlord may execute, acknowledge and deliver the same as the attorney in fact of Tenant and in Tenant's name, place and stead, and Tenant hereby irrevocably makes, constitutes and appoints Landlord, its successors and assigns, such attorney in fact for that purpose.

(c)    If the holder of any mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof shall hereafter succeed to the rights of Landlord under this Lease, whether through possession or foreclosure action or delivery of a new lease, at the option of such holder, Tenant shall attorn to and recognize such successor as Tenant's Landlord under this Lease, and shall promptly execute and deliver any instrument that may be necessary to evidence such attornment, and Tenant hereby irrevocably appoints Landlord the attorney in fact of Tenant to execute and

### 14. SUBLETTING AND REASSIGNMENTS

(a)    Tenant may not, without the prior written consent of Landlord, which consent shall be in the sole discretion of Landlord, directly or indirectly assign, transfer or hypothecate this Lease, nor any interest hereunder, nor sublet the Premises, nor any part thereof nor permit the use of the Premises by any party other than Tenant. Any merger of Tenant with another entity shall be considered an indirect assignment of this Lease. Notwithstanding any permitted assignment or subletting, Tenant shall at all times remain fully responsible and liable for the payment of the rent and other herein specified charges and for compliance with all of Tenant's other obligations under the terms, provisions and covenants of this Lease. Any such assignment or subletting shall be limited to the existing term of the Lease. Landlord shall have the right, in its discretion, to substitute any such assignee or subtenant for the Tenant and release Tenant from any further obligations under this Lease, in which event Tenant shall have no further rights or obligations under the Lease.

(b)    In the event that Landlord consents to an assignment or sublease of the Premises, the Tenant is not released from the Tenant's obligations under the Lease, and the assignee or subtenant pays a rent in excess of the rent owed by the Tenant under this Lease, then the Landlord shall be entitled to one-half (50%) of the excess.

(c)    Upon the occurrence of any default by Tenant as herein defined, if the Premises or any part thereof are then assigned or sublet, Landlord, in addition to any other remedies herein provided or provided by law, may at its option collect directly from such assignee or subtenant all rents becoming due to Tenant under such assignment or sublease and apply such rent against any sum due to Landlord by Tenant hereunder, and such collection shall not be construed to constitute a novation nor a release of Tenant from the further performance of its obligations hereunder.

### 15. MISCELLANEOUS

(a)    In the event Landlord is required by Landlord's lender or prospective lender to furnish financial statements on Tenants of the Premises, upon Landlord's request, Tenant shall furnish to such lender its most current available financial statement, provided that Tenant shall not be required to furnish more than one such statement in any calendar year. Tenant is not required to furnish the financial statement to the Landlord, only to the lender. Tenant may prohibit Lender from furnishing Landlord with a copy of the financial statement.

(b)    The words "terminate" or "termination" as used herein shall refer to the end of this Lease whether due to the expiration of the term hereof or the earlier ending of this Lese in accordance with the terms and provisions hereof.

(c)    All rights, powers and privileges conferred herein upon the parties hereto shall be cumulative but not restrictive of those given by law.

(d)    The captions used in this Lease are for convenience only and do not in any way limit or amplify the terms and provisions hereof.

(e)    One or more waiver of any covenant, term or condition of this Lease by either party shall not be construed as a waiver of subsequent breach of the same covenant, term or condition.

Page 10 of 15

The consent or approval by either party to or of any act by the other party requiring such consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

(f)    At any time and from time to time, Tenant, on or before the date specified in the request made by Landlord, which date shall not be earlier than five (5) days from the making of such request, shall execute, acknowledge and deliver at no cost to Landlord a certificate evidencing whether or not: (i) this Lease is in full force and effect; (ii) this Lease has been amended in any way and if so, how; (iii) there are any existing defaults hereunder to the knowledge of Tenant and specifying the nature of such defaults, if any; and (iv) the date to which rent, if any, has been paid. Each certificate delivered pursuant to this paragraph may be relied on by any prospective purchaser or transferee of Landlord's interest hereunder and shall stop Tenant from denying the facts stated in said statement. Each such certificate provided for herein shall be prepared by Landlord or its agent and furnished to Tenant.

(g)    This Lease contains the entire agreement of the parties and no representations or agreements, oral or otherwise, between the parties not embodied herein, shall be of any force or effect.

(h)    Time is of the essence of this agreement.

(i)    The rules and regulations attached to this instrument and any amendments and additions thereto as may be reasonably made by Landlord from time to time shall be and are hereby made a part of this Lease. Tenant, its employees and agents, will perform and abide by said rules and regulations, and any amendments or additions to said rules and regulations.

(j)    This contract shall create the relationship of Landlord and Tenant between Landlord and Tenant; no estate shall pass out of Landlord; Tenant has only a usufruct, not subject to levy and sale.

(k)    If Tenant remains in possession after expiration of the term hereof, with Landlord's acquiescence and without any agreement of parties, Tenant shall be a tenant at will; and there shall be no renewal of this Lease by operation of law. During any such holding over, the monthly rate of Rent due and payable hereunder shall be increased to 150% of the monthly rate of Rent which was last applicable hereunder prior to the holding over.

(l)    The term "Landlord" as used in this Lease means only the owner of the Premises so that in the event of any sale or sales or foreclosure thereof, Landlord, who is grantor in any such sale or foreclosure shall be and is hereby entirely relieved of all the obligations of Landlord hereunder. Any and all references to Landlord shall equally apply to its successors in interest.

(m)    All notices required to be given to Landlord hereunder shall, until contrary instructions are given to Tenant in writing, be effectively given to Landlord if mailed, by registered or certified mail, return receipt requested to the following address:

Martin G. Quirk, Esq.
Suite 450 Buckhead Centre
2964 Peachtree Road, N.W.
Atlanta, Georgia 30305

All notices required to be given to Tenant hereunder shall, until contrary instructions are given to Landlord in writing, be effectively given to Tenant if mailed, by registered or certified mail, return receipt requested, to Tenant to the following address:

Ridge Creek, Inc.
General Manager
830 Hidden Lake Road
Dahlonega, Georgia 30533

(n)     If any clause or provision of this Lease is or becomes illegal, invalid or unenforceable because of present or future laws, rules or regulations of any governmental body, or becomes unenforceable for any reason, the intention of the parties hereto is that the remaining parts of this Lease shall not be thereby affected.

(o)     Landlord will provide Tenant with a designed location on the front of the Premises above the front entrance for Tenant to place an identification sign.  Such sign must conform with Landlord's rules and regulations concerning the size and design of signs, and shall be the only sign to be placed by Tenant on the front of the Premises.

### 16. SUBORDINATION AND ATTORNMENT

(a)     Tenant agrees that this Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying Lease which may now or hereafter be in effect regarding the Premises or any, component thereof, to any mortgage now or hereafter encumbering the Demised Premises or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent hereof, whether said requirement is that of Landlord of any other party in interest, including, without limitation, any mortgagee. Landlord is hereby irrevocably vested with full power and authority as attorney-in-fact for Tenant and in Tenant's name, place and stead, to subordinate Tenant's interest under this Lease to the lien or security title of any mortgage and to any future instrument amending, modifying, renewing, consolidating, extending, restating, replacing or substituting any such mortgage.

(b)     If any mortgagee or lessee under a ground or underlying lease elects to have this Lease superior to its mortgage or Lease and signifies its election in the instrument creating its lien or Lease or by separate recorded instrument, then this Lease shall be superior to such mortgage or Lease, as the case may be. The term "mortgage", as used in this Lease, includes any deed to secure debt, deed of trust or security deed and any other instrument creating a lien in connection with any

Page 12 of 15

other method of financing or refinancing. The term "mortgagee", as used in this Lease, refers to the holder(s) of the indebtedness secured by a mortgage.

(c)    In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage covering the Demised Premises, or in the event the interests of Landlord under this Lease shall be transferred by reason of deed in lieu of foreclosure or other legal proceedings, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of the transferee or purchaser at foreclosure or under power of sale, or the lessor of the Landlord upon such Lease termination, as the case may be (sometimes hereinafter called "such person"), cancel this Lease and vacate the premises or attorn to such person and shall recognize and be bound and obligated hereunder to such person as the Landlord under this Lease; provided, however, that no such person shall be (i) bound by any payment of Rent for more than one (1) month in advance, except prepayments in the nature of security for the performance by Tenant of its obligations under this Lease (and then only if such prepayments have been deposited with and are under the control of such person); (ii) bound by any amendment or modification of this Lease made without the express written consent of the mortgagee or lessor of the Landlord, as the case may be; (iii) obligated to cure any defaults under this Lease of any prior landlord (including Landlord); (iv) liable for any act or omission of any prior landlord (including Landlord); (v) subject to any offsets or defenses which Tenant might have against any prior landlord (including Landlord); or (vi) bound by any warranty or representation of any prior landlord (including Landlord) relating to work performed by any prior landlord (including Landlord) under this Lease. Tenant agrees to execute any Attornment Agreement not in conflict herewith requested by Landlord, the mortgagee or such person. Tenant's obligation to attorn to such person shall survive the exercise of any such power of sale, foreclosure or other proceeding. Tenant agrees that the institution of any suit, action or other proceeding by any mortgagee to realize on Landlord's interest in the Demised Premises or the Building pursuant to the powers granted to a mortgagee under its mortgage, shall not, by operation of law or otherwise, result in the cancellation or termination of the obligations of Tenant hereunder. Landlord and Tenant agree that notwithstanding that this Lease is expressly subject and subordinate to any mortgages, any mortgagee, its successors and assigns, or other holder of the mortgage or note secured thereby, make such sale of the Demised Premises or Building subject to this Lease.

### 17. SPECIAL STIPULATIONS

Insofar as the following special stipulations conflict with any of the foregoing provisions, the following shall control:

_____

_____

_____

[Signatures on following page]

Page 13 of 15

**IN WITNESS WHEREOF,** the Parties hereto have hereunto set their hands and seals the day and year first above written.

TENANT: RIDGE CREEK, INC.

WITNESS _____

By: _____ , President

[SEAL]

LANDLORD: HLA, INC.

WITNESS _____

By: _____ , President

[SEAL]

(Deb)re/mis/sublease.hla.rci-2

## Exhibit "A"

All that tract or parcel of land lying in Land Lots 943, 944, 945, 946, 1001, 1002, and 1016 of the 11th District, 1st Section of Lumpkin County, Georgia and containing 190.83 acres according to a plat for Hidden Lake Academy by Michael L. Scupin & Associates recorded in plat book 27, page 76, Lumpkin County, Georgia Records, said plat being incorporated herein by reference.

EXHIBIT "A"

## COMMERCIAL REAL ESTATE SUBLEASE

THIS LEASE made this 1ˢᵗ day of January, 2001 by and between HLA, Inc., a Georgia Nonprofit Corporation (hereinafter referred to as "Sublessor" or "Landlord") and Ridge Creek, Inc, a Georgia Corporation, (hereinafter referred to as "Sublessee" or "Tenant").

### WITNESSETH:

### 1. PREMISES

Landlord does hereby demise, rent and lease to Tenant and Tenant from Landlord the following described property (hereinafter referred to as "Premises"):

The Northeast portion of the property described in Exhibit "A" attached and incorporated herein, being all that tract or parcel of land lying and being in the northeast portion of Land Lot 946.

### 2. TERM

To have and to hold the same for a term (the "Lease Term") beginning on the first (1ˢᵗ) day of January, 2001 (the "Commencement Date"), and ending at Midnight on the thirty-first (31ˢᵗ) day of December, 2007, unless sooner terminated or extended.

### 3. BASE RENTAL

Tenant shall pay to Landlord "Base Rent" of Ten Thousand and 00/100 Dollars ($10,000.00) per month in advance on the first (1ˢᵗ) day of each month beginning January 1, 2001 and ending December 31, 2007. In addition, Tenant shall pay pursuant to Paragraph 8 to Landlord all hazard and liability insurance premiums and all ad valorem real and personal property taxes for the Premises. Said insurance premiums and ad valorem real and personal property taxes for the Premises shall be paid to Landlord by Tenant upon Landlord incurring and paying such premiums and taxes. Amounts incurred for insurance premiums and ad valorem taxes shall be prorated if said premium and tax bills reflect periods of time during which Tenant has not leased the Premises so that Tenant shall only be responsible for those portions of insurance premiums and ad valorem taxes representing amounts incurred for Tenant's lease term. If ad valorem taxes are assessed on parcels larger than the area which Tenant is leasing, said taxes will be prorated according to the size of the area in which Tenant is leasing in proportion to the area upon which ad valorem taxes are based. In addition to Base Rent, hazard and liability insurance premiums, and ad valorem real and personal property taxes, Tenant shall also pay to Landlord during the term of this Lease "Percentage Rent" on the first (1ˢᵗ) day of each month beginning January 1, 2001 and continuing on the first (1ˢᵗ) day of each and every month through the month after the termination of the Lease, according to the following schedule:

(a) Fifty percent (50%) of the gross revenues for the first $70,000.00 of gross revenue for the preceding month;

(b) Seventy-five percent (75%) of the gross revenues for the amount of gross revenues between $70,000.00 and $200,000.00 for the preceding month; and

(c) Eighty percent (80%) of the gross revenues for the amount of gross revenues in excess of $200,000.00 for the preceding month.

"Gross Revenues" of Tenant for purposes of this Lease Agreement shall include all amounts of revenue received by Tenant in its operations of the Leadership Program on or from the Premises, including, but not limited to, all tuition, fees, or other revenue amounts received by Tenant, less any tuition refunds.

Together with the payment of Percentage Rent, Tenant shall deliver to Landlord a statement of all gross revenues received by Tenant during the preceding month. Landlord upon written notice to Tenant shall have the right to audit the books and records of Tenant at any time and from time to time to determine the method and accuracy of Tenant's reporting of gross revenues. Should said reporting indicate that gross revenues have been under-reported by greater than one percent (1%), then Tenant shall pay the additional rent due to Landlord plus interest at the rate of one point five percent (1.5%) per month from the date the rent should have been paid had the gross revenues been reported accurately, plus reimburse Landlord for the entire expense of the audit.

### 4. USE

(a)      The Premises shall be used for the purposes of a leadership program only and no other, said leadership program operating and having attendees present three hundred sixty-five (365) days per year each and every year during the term of this Lease. The Premises shall not be used for any illegal purposes; nor in violation of any regulation of any governmental body; nor in any manner to create any nuisance or trespass. Tenant shall at its own expense obtain any and all licenses and permits necessary for its use of the Premises. Tenant shall not receive, store or otherwise handle any product, material, or merchandise which is explosive or highly inflammable or which is considered a "Hazardous Substance" as hereinafter defined.

Hazardous Substance means pollutants, contaminants, toxic or hazardous substances or wastes, oil or petroleum products, flammables or any other substances whose nature and/or quantity of existence, use, release, manufacturer effect renders it subject to clean up under any Federal, State or local environmental, health, community awareness or safety laws or regulations, now or hereafter enacted or promulgated by any governmental authority or court ruling, or any investigation, remediation or removal.

In no event shall any activity carried out on the Premises emit smoke, noxious odor, dust, or excessive noise that would affect the neighboring buildings. Tenant will comply with the local fire department rules and regulations.

(b)      Landlord may inspect the Premises during business hours to determine whether or not Tenant is complying with the terms and provisions of this Lease or to show the Premises to prospective purchases or mortgagees of the Premises and during the last one (1) year of the term of this Lease, to prospective Tenants.

## 5. Repairs

(a)      Landlord shall, at its expense, maintain the roofs, foundation, structural parts, outside walls, and the concrete floors of the leased buildings to the extent damage thereto is due to settling, structural faults or results otherwise from causes not arising and not due to the acts or failures to act of Tenant, Tenant's assigns, Tenant's employees, students, customers, or invitees. The term "walls" as used herein shall not include glass or plate glass. Landlord gives Tenant exclusive control of the Premises and shall be under no obligation to inspect the Premises. Tenant shall immediately give Landlord written notice of any defective condition which Landlord is required to repair. after which Landlord shall have reasonable opportunity to repair same or cure such defect. Landlord shall have the right, but not the duty, to enter the Premises at any time in order to examine the Premises or of the building. Nothing contained in this Lease shall require Landlord to repair any damage caused by Tenant, and Tenant shall cause said repairs to be made at its expense.

(b)      Tenant accepts the Premises in their present condition as suited for the use intended by Tenant. Tenant shall keep and maintain the Premises in good order and good repair and first class cosmetic condition, including all grounds and structures, and shall promptly make all repairs except those previously mentioned. Tenant shall be responsible for all maintenance and repair of all decorating, grounds, equipment and fixtures used in connection with the Premises, including landscaping, heating, ventilation, air conditioning, plumbing, electric, gas, and telephone equipment and fixtures. Tenant shall on the end of the term hereof return the keys and deliver possession of the Premises by the installation, removal and/or use of said fixtures, equipment or machines. Tenant shall not remove fixtures, equipment or machines from Premises if it is in default under this Lease.

(c)      Tenant shall keep the grounds, parking areas, driveways and alleys and the whole of the Premises in a clean and sanitary condition free of any trash, scraps or any materials and products pertaining to its business. No area outside of the buildings shall be used by Tenant for storage without Landlord's prior written permission. Tenant shall care for the grounds surrounding the buildings, including the mowing of grass, care of shrubs, and general landscaping.

### 6. Alterations, Additions, Improvements and Personal Property

(a)      With the exception of the following, which shall be constructed and supplied at Landlord's sole expense, no buildings, alteration, additions or improvements in the Premises or furniture, fixtures or equipment for the premises shall be made or brought on the Premises without the prior written consent of Lessor:

1.      Administrative Building;
2.      Dormitory Building;
3.      General Purpose Building; and
4.      Furniture, Fixtures, and Equipment for the above-referenced buildings and for up to 48 students and 18 staff.

Any such building, alterations, additions or improvements must comply with all applicable zoning and building codes. Landlord may, but is not required, to approve additional buildings, alterations, additions or improvements.

(b)     At the termination of this Lease, Tenant shall, if Landlord so elects, restore the Premises to their original condition.

(c)     Tenant's obligations to observe and perform any of the provisions of this Section 6 shall survive the expiration of Lease Term hereof or earlier termination of this Lease.

## 7. DESTRUCTION OR DAMAGE

(a)     If either the Premises are totally destroyed or so substantially damaged as to be untenantable by fire, lightning, earthquake, windstorm, or other casualty, and cannot be repaired within a reasonable time, this Lease may be terminated by either party upon thirty (30) days written notice to the other, and rent shall be accounted for between Landlord and Tenant as of the termination date.

(b)     If the Premises, or any part thereof, are damaged but not rendered untenantable by any above mentioned casualty, Landlord shall repair the Premises within a reasonable time after receipt of written notice thereof; provided, that Landlord shall not be required to rebuild, repair or replace any part of the buildings, alterations, additions, improvements, equipment or machinery which may have been placed on the Premises by Tenant. Until such repairs shall be made, the rent shall be abated proportionately to the part of the Premises which is usable by Tenant. At the completion of such repairs, full rent shall recommence.

(c)     Any insurance which may be carried by Landlord or Tenant against loss or damage to the building and/or the Premises shall be for the sole benefit of the party carrying such insurance.

(d)     Tenant shall not make any use of the Premises which would make void or voidable any policy of fire or extended coverage insurance insuring the Premises, and if by reason of any use by Tenant of the Premises, the hazard premiums on policies maintained by Landlord shall be increased over normal rates for this type of building, the amount of the increase in the premium shall be paid by Tenant to Landlord from time to time on demand.

## 8. LIABILITY AND INDEMNIFICATION

(a)     Tenant does hereby agree to indemnify and save Landlord harmless from and against any and all liability for any injury to or death of any person or persons or damage to property in any way arising out of or connected with the condition, use or occupancy of the Premises, or in any way arising out of the activities of Tenant, its agents, employees, licensees or invitees on the Premises and/or the building and from all costs, expenses and liabilities, including but not limited to reasonable attorney's fees, incurred by Landlord in connection therewith, excepting, however, liability caused by Landlord's negligence.

(b)     Tenant covenants and agrees that Landlord shall not be liable to Tenant for any injury or death to any person or persons or for damage to any property of Tenant, or any person claiming through Tenant, arising out of any accident or occurrence in the Premises, including, without limiting the generality of the foregoing, injury, death or damage caused by the Premises or of any portions of the Premises being out of repair, or caused by any defect in or failure of equipment, pipes, or wiring, or caused by broken glass, or caused by the backing up of drains, or caused by gas, water, steam, electricity, or oil leaking, escaping or flowing into Premises, or caused by fire or

smoke, or caused by the acts or omissions of other tenants located in or about the building other than any and all acts caused by Landlord's negligence, and Landlord's agents, employees, licensees or invitees.

(c)     At all times during the term of this Lease, Tenant shall keep in effect with insurance companies, satisfactory to Landlord, legally authorized to transact business in Georgia and maintaining an office or agency in the State of Georgia, public liability insurance including personal injury in the name of and for the benefit of Landlord and Tenant, with limits for bodily injury or death of not less than $1,000,000 for each person; $1,000,000 for each occurrence; and for property damage not less than $100,000. All policies and certificates of insurance shall name Landlord as an additional insured and shall provide that all Landlord's losses, to the limit of the policy, will be indemnified and all liability claims against Landlord resulting from Tenant's business will be defended by Tenant or his insurance carrier at no cost to Landlord. Tenant shall promptly deliver to Landlord all such certificates of insurance, and they shall be held by Landlord. Tenant agrees that it shall not cancel any of the above mentioned policies, or allow any one to lapse without delivering to Landlord a certificate indicating equal or greater coverage written by an insurance company acceptable to Landlord. The loss limits of insurance required to be maintained by Tenant may be periodically increased by Landlord in Landlord's sole discretion and to reflect industry standards.

(d)     Notwithstanding any other provision of this Lease, each party hereto hereby waives any cause of action it may have against the other party hereto on account of any loss or damage which is covered by any insurance policy of which the damaged party is a beneficiary. Each party agrees that it will request its insurance carrier to endorse all applicable policies, waiving the carrier's right of recovery under subrogation or otherwise which said carrier would have in the absence of this Section.

(e)     Landlord does hereby agree to indemnify and save Tenant harmless from and against any and all liability for any injury to or death of any person or persons or damage to property in any way arising out of the activities of Landlord, its agents, employees, licensees or invitees on the Premises and/or the buildings and from all costs, expenses and liabilities, including but not limited to reasonable attorney's fees, incurred by Tenant in connection therewith, excepting, however, liability caused by Tenant's negligence.

## 9. DEFAULTS AND REMEDIES

(a)     If Tenant fails to keep or perform any covenant or provision of this Lease (except payment of any installment of rent or other charge or money obligation herein required to be paid by Tenant) or violates any such covenant or provision, Landlord may, in addition to all other remedies at law or in equity or elsewhere provided for in this Lease, without notice, enjoin Tenant from any such failure or violation.

(b)     Any installment of rent or any other charge or money obligation herein required to be paid by Tenant which is not paid within ten (10) days of when due shall bear interest at the rate of two percent (2%) per annum above the prime interest rate then declared or the highest lawful rate, whichever is less, from the due date until paid, and any such charge of money obligation shall be additional rent hereunder.

(c)     The occurrence of any of the following is deemed to be an event of default under this Lease:

1.     The making by Tenant of an assignment for the benefit of its creditors;

2.     The levying of a writ of execution or attachment on or against the property of Tenant and the same not being released or discharged within thirty (30) days thereafter;

3.     The institution of proceedings for the reorganization, liquidation or involuntary dissolution of Tenant, or for its adjudication as a bankrupt or an insolvent, or for the appointment of a receiver of the property of Tenant, and said proceeding not being dismissed, and any receiver, trustee or liquidator appointed therein not discharged within thirty (30) days after the institution of such proceedings;

4.     The doing or permitting to be done of any act by Tenant which creates a claim or a lien therefor against the Premises and/or building and the same not being released or otherwise provided for by indemnification satisfactory to Landlord within thirty (30) days thereafter;

5.     Failure of Tenant to pay any installment of rent or other charge or money obligation herein required to be paid by Tenant within ten (10) days after written notice or within thirty (30) days after the due date (without any requirement of notice or demand), or to comply with any other covenant or provision of this Lease within thirty (30) days after written notice of such failure is given by Landlord, or if it is not possible to cure such failure within such period promptly after receipt of such notice, to advise Landlord in writing of Tenant's intention duly to institute all steps necessary to cure such failure or violation and to begin performance of such covenant within such period and diligently to pursue performance to completion in a reasonable time thereafter; or

6.     The abandonment or desertion of all or substantially all of the Premises by Tenant.

(d)     In the event of default, Landlord has the option of pursuing any one or more of the following remedies without any notice or demand whatsoever;

1.     Terminate this Lease in which event Tenant shall immediately surrender Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have, enter upon and take possession of Premises and expel or remove Tenant and any other person who may be occupying Premises or any party thereof, by force, if necessary, without being liable for prosecution or any claim of damages therefor;

2.     Enter upon and take possession of Premises and expel or remove Tenant and any other person who may be occupying Premises or any part thereof, without being liable for prosecution or any claim of damages therefore, and, if Landlord so elects, make such alterations and repairs as may be necessary to relet Premises, and relet or any part thereof at such rent and for such period of time and subject to such terms and conditions as Landlord may deem advisable and receive the rent therefor.  Upon

Page 6 of 15

each such reletting all rent received by the Landlord from such reletting shall be applied first to the payment of any expenses of such reletting, including brokerage fees and attorney's fees and costs of such alterations and repairs; and second to the payment of any indebtedness other than rent due hereunder from Tenants to Landlord; third to the payment of rent due and unpaid hereunder; and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder. Tenant agrees to pay to Landlord on demand any deficiency that may arise by reason of such reletting. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous breach.

3. Landlord may, in addition to any other remedies at law or in equity or elsewhere in this Lease provided, cure or prosecute the curing of such failure or violation at reasonable expenses, which expenses shall be paid to Landlord by Tenant on demand. Tenant agrees that in the event of any failure or violation covered by this Article, all rights of Landlord may be exercised by persons acting on behalf of Landlord, under authority granted by Landlord, with full right of reimbursement as provided hereunder. Tenant agrees that neither Landlord nor any such person acting on its behalf shall be liable for any damage resulting to the Tenant by the exercise of the rights granted under this Article.

(e) Should Landlord terminate this Lease in accordance with the provisions of this Article, Landlord may in addition to any other remedies it may have, immediately recover from Tenant all damages Landlord may incur by reason of such breach, including the cost of recovering Premises and reasonable attorney's fees, and including the worth, at the time of such termination, of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this Lease for the remainder of the Lease term over the then reasonable rental value of Premises for the remainder of the Lease term.

(f) Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or for any damages accruing to Landlord by reason of the violation of any of the covenants and provisions herein contained.

(g) Tenant hereby appoints as its agent to receive service of all dispossessory or distress proceedings and notices thereunder the person in charge of Premises at the time, and if no person is then in charge of Premises, then such service or notice may be made by attaching the same to the entrance of Premises, provided that a copy of any such proceedings or notices shall be mailed to Tenant at the Premises.

## 10. CONDEMNATION

If during the term of this Lease, the Premises or any substantial part thereof be condemned or taken by any governmental authority or any corporation having the power of eminent domain, the court in such condemnation proceedings shall be requested to make separate awards to Landlord and Tenant, and Landlord and Tenant agree to request such action by such court; however, in the event that the court grants only one award then it shall be the sole and exclusive property of the

Landlord, and Tenant shall make no claim against this award. If an award is made or payments are available for relocation expenses of Tenant, then this award shall be the sole and exclusive property of Tenant, and Landlord shall make no claim to such and shall immediately pay such to Tenant if received by Landlord. If the entire Premises are condemned, or if the portions of the Premises remaining after such condemnation proceedings shall not be suitable for Tenant's use, this Lease shall terminate as of the date of taking. If the portion of the Premises remaining after such condemnation proceedings shall be suitable for Tenant's use, the rent payable by Tenant to Landlord after taking shall be reduced to the proportion of the rent stipulated hereunder which the square footage of the Premises remaining after the taking bears to the square footage of the Premises immediately prior to the taking.

## 11. Subordination

(a)    This Lease and all rights of Tenant hereunder are and shall be subject and subordinate to the lien of any mortgage, deed to secure debt, deed of trust or other instrument in the nature thereof which may now or hereafter effect Landlord's or his successors interest in the fee title to the Premises. Landlord agrees to use its best efforts to obtain an agreement from any future lenders to allow the attornment of Tenant to such Lender should such lender become the Landlord, so long as Tenant is not in default under the terms hereof. In confirmation of such subordination, Tenant shall, upon demand, at any time or times execute, acknowledge and deliver to Landlord, without expense to Landlord, any and all instruments that may be requested by Landlord to evidence the subordination of this Lease and all rights hereunder to the lien of any such mortgage, deed to secure debt, deed of trust or other instrument in the nature thereof, and each renewal, modification, consolidation, replacement, or extension thereof, and, if Tenant shall fail at any time to execute, acknowledge, and deliver any such instrument, Landlord, in addition to any other remedies available to it in consequence thereof, may execute, acknowledge and deliver the same as the attorney in fact of Tenant and in Tenant's name, place and stead, and tenant hereby irrevocably makes, constitutes and appoints Landlord, its successors and assigns, such attorney in fact for that purpose.

(b)    Notwithstanding the preceding sub-paragraph, Landlord or his successor in interest may elect to make this Lease superior to the lien of any mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof. Tenant shall, upon Landlord's request, at any time or times, execute, acknowledge and deliver to Landlord without expense to Landlord, any and all instruments that may be necessary to make this Lease superior to the lien of any such mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof, and each such renewal, modification, consolidation, replacement or extension thereof, and, if Tenant shall fail at any time to execute, acknowledge and deliver such instrument in addition to any other remedies available in consequence thereof, Landlord may execute, acknowledge and deliver the same as the attorney in fact of Tenant and in Tenant's name, place and stead, and Tenant hereby irrevocably makes, constitutes and appoints Landlord, its successors and assigns, such attorney in fact for that purpose.

(c)    If the holder of any mortgage, deed to secure debt, deed of trust, or other instrument in the nature thereof shall hereafter succeed to the rights of Landlord under this Lease, whether through possession or foreclosure action or delivery of a new lease, at the option of such holder, Tenant shall attorn to and recognize such successor as Tenant's Landlord under this Lease, and shall promptly execute and deliver any instrument that may be necessary to evidence such attornment, and Tenant hereby irrevocably appoints Landlord the attorney in fact of Tenant to execute and

## 14. SUBLETTING AND REASSIGNMENTS

(a)     Tenant may not, without the prior written consent of Landlord, which consent shall be in the sole discretion of Landlord, directly or indirectly assign, transfer or hypothecate this Lease, nor any interest hereunder, nor sublet the Premises, nor any part thereof nor permit the use of the Premises by any party other than Tenant. Any merger of Tenant with another entity shall be considered an indirect assignment of this Lease. Notwithstanding any permitted assignment or subletting, Tenant shall at all times remain fully responsible and liable for the payment of the rent and other herein specified charges and for compliance with all of Tenant's other obligations under the terms, provisions and covenants of this Lease. Any such assignment or subletting shall be limited to the existing term of the Lease. Landlord shall have the right, in its discretion, to substitute any such assignee or subtenant for the Tenant and release Tenant from any further obligations under this Lease, in which event Tenant shall have no further rights or obligations under the Lease.

(b)     In the event that Landlord consents to an assignment or sublease of the Premises, the Tenant is not released from the Tenant's obligations under the Lease, and the assignee or subtenant pays a rent in excess of the rent owed by the Tenant under this Lease, then the Landlord shall be entitled to one-half (50%) of the excess.

(c)     Upon the occurrence of any default by Tenant as herein defined, if the Premises or any part thereof are then assigned or sublet, Landlord, in addition to any other remedies herein provided or provided by law, may at its option collect directly from such assignee or subtenant all rents becoming due to Tenant under such assignment or sublease and apply such rent against any sum due to Landlord by Tenant hereunder, and such collection shall not be construed to constitute a novation nor a release of Tenant from the further performance of its obligations hereunder.

## 15. MISCELLANEOUS

(a)     In the event Landlord is required by Landlord's lender or prospective lender to furnish financial statements on Tenants of the Premises, upon Landlord's request, Tenant shall furnish to such lender its most current available financial statement, provided that Tenant shall not be required to furnish more than one such statement in any calendar year. Tenant is not required to furnish the financial statement to the Landlord, only to the lender. Tenant may prohibit Lender from furnishing Landlord with a copy of the financial statement.

(b)     The words "terminate" or "termination" as used herein shall refer to the end of this Lease whether due to the expiration of the term hereof or the earlier ending of this Lese in accordance with the terms and provisions hereof.

(c)     All rights, powers and privileges conferred herein upon the parties hereto shall be cumulative but not restrictive of those given by law.

(d)     The captions used in this Lease are for convenience only and do not in any way limit or amplify the terms and provisions hereof.

(e)     One or more waiver of any covenant, term or condition of this Lease by either party shall not be construed as a waiver of subsequent breach of the same covenant, term or condition.

Page 10 of 15

The consent or approval by either party to or of any act by the other party requiring such consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

(f) At any time and from time to time, Tenant, on or before the date specified in the request made by Landlord, which date shall not be earlier than five (5) days from the making of such request, shall execute, acknowledge and deliver at no cost to Landlord a certificate evidencing whether or not: (i) this Lease is in full force and effect; (ii) this Lease has been amended in any way and if so, how; (iii) there are any existing defaults hereunder to the knowledge of Tenant and specifying the nature of such defaults, if any; and (iv) the date to which rent, if any, has been paid. Each certificate delivered pursuant to this paragraph may be relied on by any prospective purchaser or transferee of Landlord's interest hereunder and shall stop Tenant from denying the facts stated in said statement. Each such certificate provided for herein shall be prepared by Landlord or its agent and furnished to Tenant.

(g) This Lease contains the entire agreement of the parties and no representations or agreements, oral or otherwise, between the parties not embodied herein, shall be of any force or effect.

(h) Time is of the essence of this agreement.

(i) The rules and regulations attached to this instrument and any amendments and additions thereto as may be reasonably made by Landlord from time to time shall be and are hereby made a part of this Lease. Tenant, its employees and agents, will perform and abide by said rules and regulations, and any amendments or additions to said rules and regulations.

(j) This contract shall create the relationship of Landlord and Tenant between Landlord and Tenant; no estate shall pass out of Landlord; Tenant has only a usufruct, not subject to levy and sale.

(k) If Tenant remains in possession after expiration of the term hereof, with Landlord's acquiescence and without any agreement of parties, Tenant shall be a tenant at will; and there shall be no renewal of this Lease by operation of law. During any such holding over, the monthly rate of Rent due and payable hereunder shall be increased to 150% of the monthly rate of Rent which was last applicable hereunder prior to the holding over.

(l) The term "Landlord" as used in this Lease means only the owner of the Premises so that in the event of any sale or sales or foreclosure thereof, Landlord, who is grantor in any such sale or foreclosure shall be and is hereby entirely relieved of all the obligations of Landlord hereunder. Any and all references to Landlord shall equally apply to its successors in interest.

(m) All notices required to be given to Landlord hereunder shall, until contrary instructions are given to Tenant in writing, be effectively given to Landlord if mailed, by registered or certified mail, return receipt requested to the following address:

Martin G. Quirk, Esq.
Suite 450 Buckhead Centre
2964 Peachtree Road, N.W.
Atlanta, Georgia 30305

All notices required to be given to Tenant hereunder shall, until contrary instructions are given to Landlord in writing, be effectively given to Tenant if mailed, by registered or certified mail, return receipt requested, to Tenant to the following address:

Ridge Creek, Inc.
General Manager
830 Hidden Lake Road
Dahlonega, Georgia 30533

(n)     If any clause or provision of this Lease is or becomes illegal, invalid or unenforceable because of present or future laws, rules or regulations of any governmental body, or becomes unenforceable for any reason, the intention of the parties hereto is that the remaining parts of this Lease shall not be thereby affected.

(o)     Landlord will provide Tenant with a designed location on the front of the Premises above the front entrance for Tenant to place an identification sign. Such sign must conform with Landlord's rules and regulations concerning the size and design of signs, and shall be the only sign to be placed by Tenant on the front of the Premises.

## 16. SUBORDINATION AND ATTORNMENT

(a)     Tenant agrees that this Lease and all rights of Tenant hereunder are and shall be subject and subordinate to any ground or underlying Lease which may now or hereafter be in effect regarding the Premises or any, component thereof, to any mortgage now or hereafter encumbering the Demised Premises or any component thereof, to all advances made or hereafter to be made upon the security of such mortgage, to all amendments, modifications, renewals, consolidations, extensions and restatements of such mortgage, and to any replacements and substitutions for such mortgage. The terms of this provision shall be self-operative and no further instrument of subordination shall be required. Tenant, however, upon request of any party in interest, shall execute promptly such instrument or certificates as may be reasonably required to carry out the intent hereof, whether said requirement is that of Landlord of any other party in interest, including, without limitation, any mortgagee. Landlord is hereby irrevocably vested with full power and authority as attorney-in-fact for Tenant and in Tenant's name, place and stead, to subordinate Tenant's interest under this Lease to the lien or security title of any mortgage and to any future instrument amending, modifying, renewing, consolidating, extending, restating, replacing or substituting any such mortgage.

(b)     If any mortgagee or lessee under a ground or underlying lease elects to have this Lease superior to its mortgage or Lease and signifies its election in the instrument creating its lien or Lease or by separate recorded instrument, then this Lease shall be superior to such mortgage or Lease, as the case may be. The term "mortgage", as used in this Lease, includes any deed to secure debt, deed of trust or security deed and any other instrument creating a lien in connection with any

other method of financing or refinancing. The term "mortgagee", as used in this Lease, refers to the holder(s) of the indebtedness secured by a mortgage.

(c)     In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage covering the Demised Premises, or in the event the interests of Landlord under this Lease shall be transferred by reason of deed in lieu of foreclosure or other legal proceedings, or in the event of termination of any Lease under which Landlord may hold title, Tenant shall, at the option of the transferee or purchaser at foreclosure or under power of sale, or the lessor of the Landlord upon such Lease termination, as the case may be (sometimes hereinafter called "such person"), cancel this Lease and vacate the premises or attorn to such person and shall recognize and be bound and obligated hereunder to such person as the Landlord under this Lease; provided, however, that no such person shall be (i) bound by any payment of Rent for more than one (1) month in advance, except prepayments in the nature of security for the performance by Tenant of its obligations under this Lease (and then only if such prepayments have been deposited with and are under the control of such person); (ii) bound by any amendment or modification of this Lease made without the express written consent of the mortgagee or lessor of the Landlord, as the case may be; (iii) obligated to cure any defaults under this Lease of any prior landlord (including Landlord); (iv) liable for any act or omission of any prior landlord (including Landlord); (v) subject to any offsets or defenses which Tenant might have against any prior landlord (including Landlord); or (vi) bound by any warranty or representation of any prior landlord (including Landlord) relating to work performed by any prior landlord (including Landlord) under this Lease. Tenant agrees to execute any Attornment Agreement not in conflict herewith requested by Landlord, the mortgagee or such person. Tenant's obligation to attorn to such person shall survive the exercise of any such power of sale, foreclosure or other proceeding. Tenant agrees that the institution of any suit, action or other proceeding by any mortgagee to realize on Landlord's interest in the Demised Premises or the Building pursuant to the powers granted to a mortgagee under its mortgage, shall not, by operation of law or otherwise, result in the cancellation or termination of the obligations of Tenant hereunder. Landlord and Tenant agree that notwithstanding that this Lease is expressly subject and subordinate to any mortgages, any mortgagee, its successors and assigns, or other holder of the mortgage or note secured thereby, make such sale of the Demised Premises or Building subject to this Lease.

### 17. SPECIAL STIPULATIONS

Insofar as the following special stipulations conflict with any of the foregoing provisions, the following shall control:

_____

_____

_____

[Signatures on following page]

Page 13 of 15

**IN WITNESS WHEREOF,** the Parties hereto have hereunto set their hands and seals the day and year first above written.

TENANT:  RIDGE CREEK, INC.

WITNESS _____

By: _____ , President

[SEAL]

LANDLORD: HLA, INC.

WITNESS _____

By: _____ , President

[SEAL]

(Deb)rc/mis/sublease.hla.rc1-2

## EXHIBIT "A"

All that tract or parcel of land lying in Land Lots 943, 944, 945, 946, 1001, 1002, and 1016 of the 11th District, 1st Section of Lumpkin County, Georgia and containing 190.83 acres according to a plat for Hidden Lake Academy by Michael L. Scupin & Associates recorded in plat book 27, page 76, Lumpkin County, Georgia Records, said plat being incorporated herein by reference.