# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 09-22026-reb |
| | : | |
| HLA, INC., | : | |
| | : | CHAPTER 11 |
| DEBTOR. | : | |

## UNITED STATES TRUSTEE'S OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION

COMES NOW the United States Trustee, in furtherance of the administrative responsibilities imposed by 28 U.S.C. § 586(a), and asserts the following objections to the Disclosure Statement filed by the Debtor in the above-captioned case on October 30, 2009 [Doc. # 76], with respect to its Plan of Reorganization ("the **Plan**") filed on the same date [Doc. #75].

The United States Trustee contends that the Disclosure Statement fails to provide "adequate information" within the meaning of 11 U.S.C. § 1125 in the following respects:

1. Debtor indicates that formerly operated a therapeutic boarding school but has now discontinued such operations, stating, at page 8 of the Disclosure Statement, that its "sole source of revenue to fund the plan will be the monthly rental income generated from leasing facilities and premises to Ridge Creek," which "began full school operations in September 2009." However, Debtor's pro forma budget contained in Exhibit "F" to the Disclosure Statement (the "**HLA Budget**") lists operating expenses of approximately $70,000 per month, including approximately $20,000 per month for "Food and Cafeteria" service. Some explanation should be provided for Debtor's need to incur such expenses going forward, given its evident cessation of operating activities.

2. The Commercial Real Estate Sublease between Debtor and Ridge Creek, Inc., that is included in Exhibit "B" to the Disclosure Statement expired by its terms on December 31, 2007. Information should be provided regarding the terms of any lease that is currently in effect between Debtor and Ridge Creek. In this regard, it appears from the HLA Budget that Debtor expects to receive monthly payments from Ridge Creek that are precisely equal to its monthly expenses.

3. On its Internet website, Ridge Creek describes itself as "a 28-day wilderness, leadership program, which has contracted with Hidden Lake Academy for the purposes of awarding academic credits."[1] Information should be provided regarding the terms of any agreements between Debtor and Ridge Creek regarding the of awarding academic credits by Debtor to Ridge Creek students and whether and to what extent such an arrangement has been approved by the pertinent licensing and accrediting authorities.[2]

4. The Plan provides for payments totaling in excess of $25,000 per month to the IRS and Georgia taxing authorities, yet the only payments to such taxing authorities included in the HLA Budget are payments of $7,550 per month to the IRS. An explanation should be provided for this apparent discrepancy.

5. According to the "Hidden Lake Budget" contained in Exhibit "F" to the Disclosure Statement, Debtor will pay rent to Hidden Lake Academy, Inc., in the amount of $53,770 per month

---

[1] http://www.ridgecreek.org/academics

[2] Debtor asserts at page 7 of the Disclosure Statement that it is licensed by the Georgia Department of Human Services as child care institution, that it is accredited by the Southern Association of Colleges and Schools, Southern Association of Independent Schools, and Georgia Accrediting Commission, and that it is a member of Georgia Independent School Association.

commencing in 2010. However, the payments by Debtor to Hidden Lake Academy contemplated by the HLA Budget are only $36,500 per month.[3] An explanation should likewise be provided for this apparent discrepancy.

6. The monthly payment of $4,720 to "Morris Law firm" that is included in the HLA Budget should be explained, as the Plan does not appear to provide for any such payments.

7. Attached as Exhibit "A" to the Disclosure Statement is a 68-page document purporting to list all payments made to or for the benefit of insiders during the year prior to the commencement of the case. The United States Trustee submits that this information is not readily ascertainable from this document and that a summary should be provided identifying each insider who received cash or other property of the debtor during this period and disclosing the total amount received by each such insider.

8. The provisions pertaining to executory contracts appearing at page 14 of the Disclosure Statement are inadequate in that they do not identify the executory contracts to be assumed by Debtor or the estimated cure payments required to do so. In this regard, the statement, "Please Provide Information Regarding Which Leases and Executory Contract HLA Wants to Assume and Assign to Ridge Creek or Reject," presumably was not intended to be included in the Disclosure Statement.

9. The statement at page 11 of the Disclosure Statement that "Debtor does not anticipate any substantial recovery from preference litigation" should be reconciled with the statement at page 15 that "Debtor is reviewing records and believes there are potential preference claims."

---

[3] The line item in question is entitled, "Debt Repayment - BB&T"

10. Debtor's classification of priority tax claims in Classes 2, 3, and 5 and its characterization of holders of such claims as impaired and entitled to vote on the Plan do not comport with 11 U.S.C. § 1123(a)(1). *See In re Northwest Timberline Enterprises, Inc.*, 348 B.R. 412, 422 (Bankr. N.D.Tex. 2006) ([P]riority tax claims ... are not supposed to be classified in a Chapter 11 plan for voting or other purposes ...").

11. To enable creditors to assess the Plan's feasibility, an estimate should be provided of the total amount of the unsecured claims comprising Classes 7 and 9 and the amount of the monthly payments on these claims called by the Plan.[4]

12. The classification and treatment of "Interest Claims" in Class 11 is inconsistent with Debtor's status as a non-profit corporation.

13. The following statement appearing on page 23 under the heading "Liquidation Analysis" is at best confusing and should be rephrased: "The Debtor's Plan provides funding for the Plan from ongoing business operations and pay Holders of Allowed Unsecured Trade Claims in full."

14. Information should be provided regarding Debtor's prospects for collecting the $1,470,750 receivable owed by Ridge Creek Schools and its efforts to date to do so.

15. An explanation should be provided for the provision releasing all "consultants, agents, financial advisors, attorneys and other representatives of the Debtor who served in such capacity on or subsequent to the Filing Date" from any and all claims or causes of action existing against them,

---

[4] Although the Disclosure Statement states at page 20 that charts "illustrating" the potential Class 7 and Class 9 claimants are attached as Exhibits "H" and "I," no such charts are in fact attached.

as it does not appear to benefit creditors in any way.

WHEREFORE, the United States Trustee objects to approval of the Disclosure Statement in its current form and requests to be heard at a hearing on this matter.

DONALD F. WALTON
United States Trustee
Region 21

  /s/ *James H. Morawetz*
JAMES H. MORAWETZ
Georgia Bar No. 521900
Trial Attorney

Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, SW
Atlanta, GA 30303
Tel: (404) 331-4437
Fax: (404) 331-4464
E-mail: jim.h.morawetz@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and that on this date I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will cause an electronic notification of such filing to be sent to the following:

M. Denise Dotson, Esq.
ddotsonlaw@me.com
170 Mitchell St.
Atlanta, GA 30303

This the __18th__ day of November, 2009.

  /s/ *James H. Morawetz*
JAMES H. MORAWETZ
Georgia Bar No. 521900
Trial Attorney

5